
IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 22, 2017 Session

## RODNEY AND TAMMY HENDERSON, ET AL v. THE VANDERBILT UNIVERSITY

**Appeal from the Circuit Court for Davidson County**
No. 14C2903        Joseph P. Binkley, Jr., Judge

_____

### No. M2016-01876-COA-R9-CV

_____

The trial court granted partial summary judgment to the defendant hospital on the ground that the plaintiffs could not establish that they witnessed or perceived an injury-producing event for purposes of their negligent infliction of emotional distress claims. We hold that the alleged failure of the defendant hospital to provide care to the plaintiffs' daughter, despite repeated assurances from the hospital that it would occur, constitutes an injury-producing event that was witnessed by plaintiffs. Accordingly, the trial court erred in dismissing plaintiffs' negligent infliction of emotional distress claims on this basis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which KENNY ARMSTRONG, J., joined, BRANDON O. GIBSON J., dissenting.

Gary K. Smith v. Karen M. Campbell, Memphis, Tennessee, for the appellants, Rodney Henderson, and Tammy Henderson.

Thomas A. Wiseman and Kimberly G. Silvus, Nashville, Tennessee, for the appellee, The Vanderbilt University.

### OPINION

### Background

Plaintiffs/Appellants Rodney and Tammy Henderson, individually and on behalf of their deceased minor daughter ("Appellants"), filed a complaint against Defendant/Appellee The Vanderbilt University ("Vanderbilt") on July 7, 2014. Therein,

Appellants alleged that their ten-year old daughter, Halle, was admitted to the Vanderbilt Pediatric Intensive Care Unit ("PICU") for septic shock related to the flu on March 23, 2013. Although the child was given fluids and other medicines, "[n]o central line was placed, no echocardiogram was performed; no one called for a cardiology consult." In the evening of March 24, the child's care was transferred from the attending physician to a resident. The complaint alleged that after that time, the attending physician did not see the child. In the morning of March 25, Appellants alleged that they witnessed their daughter go into cardiac arrest. After two hours of CPR, the child was placed on extracorporeal membrane oxygenation.[1] Appellants alleged that after the arrest, the child's condition continued to deteriorate. During a procedure on April 4, 2013, the child suffered a stroke and was ultimately diagnosed with brain death. Accordingly, Appellants stated that "a decision was made to withdraw care." As a result, the child passed away on April 5, 2013.

The complaint alleged various forms of negligence against Vanderbilt, all generally relating to Vanderbilt's failure "to provide reasonable medical care and treatment and services" to the child. In addition to a wrongful death claim, Appellants also included a claim for negligent infliction of emotional distress ("NIED"). Only Appellants' NIED claim is at issue in this appeal.

Vanderbilt filed an answer on September 12, 2014. Relevant to this appeal, Vanderbilt denied that it, its employees, or its agents committed any negligence and averred that Appellants failed to state a claim upon which relief could be granted with regard to their NIED claim. Mr. Henderson's deposition was taken on August 28, 2015. Therein, Mr. Henderson detailed the medical treatment provided to his daughter leading up to her cardiac arrest on the morning of March 24, 2013, and her eventual death on April 5, 2013. According to Mr. Henderson, he and his wife repeatedly asked that the child receive additional care during the approximately twelve hours between her admittance to Vanderbilt and her arrest. Specifically, Mr. Henderson testified that he spoke with Vanderbilt staff about the child receiving a cardiology consult at 1:00 a.m., 2:00 a.m., 3:00 a.m., and 4:15 a.m. At around 5:00 a.m., Mr. Henderson was in the hallway speaking with a doctor again about the promised cardiology consult, while Mrs. Henderson was in the child's room. At this time, the child went into cardiac arrest. Mr. Henderson testified that although he was in the hallway, he heard his wife screaming and the child's machines sounding. Mr. Henderson further testified that he saw the child "arch[] up" and urinate during the cardiac arrest. Mr. Henderson and his wife stayed in the room for a few minutes while doctors and nurses rushed in but were soon ushered into the hallway. Mr. Henderson testified that they later learned that Vanderbilt staff

---

[1] Extracorporeal membrane oxygenation is defined as "a device that oxygenates a patient's blood outside the body and returns the blood to the patient's circulatory system." *Mosby's Dictionary of Medicine, Nursing & Health Professions* 664 (9th ed. 2013).

performed CPR on the child for over an hour. Mr. Henderson described the child's cardiac arrest as "a shock."

Mr. Henderson testified that the trauma from the ordeal and the child's death has been devastating for his family. Mr. Henderson takes medication for depression and anxiety but was eventually able to return to work after several months. The same was not true for Mrs. Henderson. According to Mr. Henderson, Mrs. Henderson takes up to four Xanax per day to cope with her depression and anxiety, which prevents her from taking care of Appellants' other child. In addition, Mr. Henderson testified that Mrs. Henderson twice attempted to end her life, resulting in in-patient psychiatric treatment. Mr. Henderson explained that Mrs. Henderson now reads her Bible and goes to church but otherwise does not participate in the daily activities of life.

On July 6, 2016, Vanderbilt filed a motion for partial summary judgment, arguing that Appellants' NIED claim should be dismissed because Appellants had not witnessed an injury-producing event necessary to sustain their NIED claim. Specifically, Vanderbilt asserted that the only "event" that formed the basis of the NIED claim was "complications," which is insufficient to serve as the factual predicate for an NIED claim. Vanderbilt also asserted that Appellants did not witness the actual event that caused the child's death—her stroke—nor did Appellants witness the efforts to resuscitate the child after her cardiac arrest. Attached to Vanderbilt's motion was a statement of undisputed material facts. Therein, Vanderbilt admitted that Appellants were with the child "nearly the entire time that she was in the PICU," and that Appellants "were present when their daughter arrested, but they were ushered out of their daughter's room when the physicians and nurses responded to that event."

Appellants responded in opposition, arguing that Vanderbilt incorrectly characterized the child's stroke as the sole cause of her death. Rather, Appellants alleged that Vanderbilt's failure to appropriately treat the child's shock caused a chain reaction that ultimately led to the child's stroke and death. According to Appellants, had the child's shock been appropriately managed, the child would not have gone into cardiac arrest, would not have had a stroke, and would not have died. As such, Appellants asserted that they had witnessed the injury-producing event, which Appellants defined as "multiple care failures," and the deterioration and suffering of the child, while Mr. Henderson repeatedly requested a cardiology consult.

In support, Appellants submitted the affidavit of an expert who opined that the child's death was caused by Vanderbilt's failure to appropriately manage the child's shock. According to the expert, had Vanderbilt appropriately managed the shock, "it is more probable than not that the child would not have reached the point of suffering a cardiac arrest or any of the other complications that resulted in her death." Appellants also submitted the affidavits of three experts to support their claims of severe emotional injuries. A psychiatrist who had performed consultations on Appellants stated that Ms.

Henderson specifically cited "March 24, 2013" as her "chief complaint" and the cause of her severe depression and anxiety. Likewise, a licensed psychiatric nurse practitioner who was providing treatment for Appellants detailed their severe emotional injuries and opined that these injuries resulted from the events of "what transpired at Vanderbilt" leading to the child's cardiac arrest and eventual death.

Although Appellants generally agreed with Vanderbilt's statement of undisputed material facts for purposes of summary judgment, Appellants submitted their own statement of facts, which they argued were undisputed. This statement detailed the suffering of the child leading up to her death, Mr. Henderson's multiple requests for a cardiology consult, Appellants' medical expert's opinion that the child's death was a result of untreated shock, and Appellants' experts' opinions regarding the resulting severe emotional harm to Appellants. Specifically, Appellants alleged that in the hours prior to her cardiac arrest, the child was complaining that her chest was hurting and that she was having difficulty breathing. At one point, the child informed Mrs. Henderson that she was "scared." According to Appellants, the child was also "panting like an animal" and out of breath. Appellants further alleged that they witnessed the child's distress, understood that her heart rate was abnormal, and repeatedly questioned Vanderbilt's staff about her not receiving any treatment or testing. Appellants also asserted that Vanderbilt staff repeatedly assured Mr. Henderson that a cardiology consultation had been ordered. Nevertheless, no cardiology consultation occurred prior to the child's cardiac arrest. As a result, Mr. Henderson alleged that he was "quite upset" even before the child went into cardiac arrest.

With regard to Appellants' emotional injuries, Appellants' statement of undisputed material facts contained the opinions of three qualified experts, a licensed social worker, a psychiatrist, and a psychiatric mental health nurse practitioner. The experts were in agreement that Appellants both suffered severe or serious emotional injuries. As to the cause of these injuries, the experts generally pointed to "the events of March 23, 2013 and March 24, 2013 in which [the child] suffered from shock and ultimately went into cardiac arrest." In reaching this conclusion, both the psychiatrist and the licensed social worker noted that parents were present when the child's condition deteriorated and that Appellants "were expressing great worry and asking health care providers for additional care measures." Vanderbilt later admitted all of Appellants' undisputed material facts for purposes of the motion for partial summary judgment.

The trial court held a hearing on the motion for partial summary judgment on August 16, 2016. At the conclusion of the hearing, the trial court orally ruled that it was granting Vanderbilt's partial motion for summary judgment. A written order was entered incorporating the trial court's oral ruling on September 2, 2016. In granting partial summary judgment to Vanderbilt on Appellants' NIED claim, the trial court ruled that Appellants "were not in sufficient proximity to the injury-producing event and did not meaningfully comprehend the injury producing event." Specifically, the trial court ruled

that because Appellants did not observe or comprehend the injury-producing event, which the trial court characterized as Vanderbilt's "inadequate medical care over a period of approximately [twelve] hours leading up to the seizure and cardiac arrest," their claim for NIED could not lie. In reaching this result, the trial court relied on a California Supreme Court case, **Bird v. Saenz**, 51 P.3d 324 (Cal. 2002), which held that in order to sustain an NIED claim, the plaintiff must have been aware of the defendant's negligence at the time of the injury-producing event. On the same day, the trial court granted Appellants' request for an interlocutory appeal. This Court likewise granted Appellants' request for an interlocutory appeal on September 28, 2016.

## Discussion

This case presents a single issue: whether the trial court erred in granting Vanderbilt's motion for partial summary judgment with regard to Appellants' NIED claims.[2] Summary judgment is appropriate where: (1) there is no genuine issue with

---

[2] The dissent disputes that this is an appropriate issue for review. Rather, my learned colleague posits that this Court must address this case only as specifically and expressly framed by Appellants in their Rule 9 application and addressed by the trial court. Our scope of review in a Rule 9 appeal is generally defined by both the trial court's order and this Court's order granting the Rule 9 application, not merely the Rule 9 application. *See* **Culbertson v. Culbertson**, 455 S.W.3d 107, 156 (Tenn. Ct. App. 2014) (citing **In re S.L.M.**, 207 S.W.3d 288, 294 n. 15 (Tenn. Ct. App. 2006) (declining to address issues beyond scope of issues defined in appellate court order granting Rule 9 interlocutory appeal)). Here, both the trial court and the Court of Appeals failed to designate a specific issue in granting Appellants' Rule 9 application. In the absence of specific issues being designated in the orders granting a Rule 9 application, however, Tennessee courts have often reframed issues, regardless of the actual language used by the appellant. *See, e.g.,* **Jenkins v. Yellow Transp., Inc.**, No. M2009-02471-WC-R3-WC, 2011 WL 1418546, at *3 (Tenn. Workers Comp. Panel Apr. 13, 2011) ("YRC raises several issues for our review; however, the issue of whether . . . ."); **Hadjopoulos v. Sponcia**, No. E2015-00793-COA-R3-CV, 2016 WL 1728250, at *4 (Tenn. Ct. App. Apr. 28, 2016) ("Our review of the record on appeal convinces us that the dispositive issue is not that raised by Parents, but rather whether the Trial Court's order is sufficient for this Court to conduct an effective appellate review. We find that it is not."); **Town of Middleton v. City of Bolivar**, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *8 (Tenn. Ct. App. July 13, 2012) ("Bolivar raises five issues for review as stated in its brief; however, we perceive that there are three dispositive issues, which we state as follows: . . . ."). Accordingly, it does not appear to be error to re-frame the issue raised by Appellants.

In addition, although this portion of the trial court's order is omitted from the dissent's recitation, the trial court clearly relied on the California Supreme Court's holding in **Bird**, which adopts a narrow rule for NIED cases involving medical negligence. As such, the trial court's ruling that Appellants could not "comprehend the alleged acts of negligence (the injury-producing event) that led to the seizure and cardiac arrest," relates directly to the trial court's adoption of the rule in **Bird** that "a [medical] misdiagnosis is beyond the awareness of lay bystanders." *See* **Bird**, 51 P.3d at 328–29 (discussed in detail, *infra*). Indeed, both parties expend considerable effort in their respective briefs on the issue of whether medical negligence may serve as the predicate tort for a bystander NIED claim under the facts of this case. As such, the question of whether a similar rule should be adopted in Tennessee is, respectfully, squarely at issue in this appeal.

Finally, as discussed in detail *infra*, the dissent asserts that this Court should adopt a rule disallowing bystander NIED claim unless the injury-producing event alleged is a "sudden, traumatic

regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. Our Supreme Court in *Rye v. Women's Care Center of Memphis, MPLLC* recently explained the burden-shifting analysis to be employed by courts tasked with deciding a motion for summary judgment:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264–65 (Tenn. 2015) (judicially adopting a summary judgment parallel to the statutory version contained in Tenn. Code Ann. § 20-16-101); *see also* Tenn. Code Ann. § 20-16-101 (applying to cases filed after July 1, 2011).

---

event[.]" In support, the dissent cites cases from other jurisdictions. *See Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. Ct. App. 2008); *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 777 (N.M. 1998) (discussed in detail, *infra*). Neither case was cited by the parties in this appeal. Indeed, rather than argue that this Court should adopt a rule requiring a sudden, traumatic event, Appellees argue the very issue addressed by this Opinion: that this Court should limit bystander NIED claims in the medical negligence context. Moreover, in granting partial summary judgment, the trial court did not rule that Appellant's NIED claim failed for lack of a sudden event. Accordingly, we are unable to discern how in addressing the arguments raised both in the trial court and throughout the parties' briefs, this Court is impermissibly expanding the scope of this Rule 9 appeal, while the analysis of the dissent does not.

Additionally, on appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## I.

Simply put, an NIED claim is an avenue for a plaintiff to recover for emotional injuries that result from another's negligence. *See generally Marla H. v. Knox Cty.*, 361 S.W.3d 518, 528–29 (Tenn. Ct. App. 2011); *Negligent conduct causing emotional injury—In general*, 4 Modern Tort Law: Liability and Litigation § 32:13 (2d ed.). Despite this seemingly simple explanation, Tennessee courts have often remarked that the law surrounding NIED claims is murky and difficult. *See Ramsey v. Beavers*, 931 S.W.2d 527, 530 (Tenn. 1996) (describing NIED as an "interesting, but difficult, area of the law"); *Camper v. Minor*, 915 S.W.2d 437, 440 (Tenn. 1996) (describing NIED law at the time as "inconsisten[t] and incoheren[t]"). From 1996 to 2008, the Tennessee Supreme Court addressed the substantive merits of NIED claims on seven occasions. *See generally Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521 (Tenn. 2008); *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008); *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004); *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001); *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997); *Ramsey*, 931 S.W.2d 527; *Camper*, 915 S.W.2d 437. Vanderbilt argues that Appellants now desire to "change[]" Tennessee law by "[e]xpanding the application of [the NIED] tort claim[.]" To allow the claim in this case, Vanderbilt contends, would "undo twenty years of precedent" and inject uncertainty into NIED law. In contrast, Appellants assert that Vanderbilt seeks to impose a new limitation on NIED claims that has never before been recognized by Tennessee courts. In support, Appellants note that the main support for Vanderbilt's argument comes from outside our jurisdiction. Accordingly, Appellants ask this court to reject Vanderbilt's effort to place new limitations on otherwise meritorious NIED claims in furtherance of the Tennessee Supreme Court's clear effort to "expand[] the ability of bystanders to recover damages" for emotional injuries. *Eskin*, 262 S.W.3d at 735. In order to determine this question, a review of NIED jurisprudence is helpful.

The Tennessee Supreme Court's first expansion of the NIED tort occurred in *Camper v. Minor*. In *Camper*, the Tennessee Supreme Court rejected Tennessee's previously adopted "physical impact rule" as "seriously flawed." *Camper*, 915 S.W.2d at 441. Accordingly, rather than requiring that the plaintiff suffer a physical injury in

addition to emotional damages as a result of the defendant's conduct, the **Camper** court recognized for the first time that emotional injuries could be serious and yet not accompanied by physical injuries. **Id.** at 446. In order to balance the need to compensate those who have sustained emotional injuries as a result of the negligence of others with the need to "winnow out" frivolous claims at the summary judgment stage, the **Camper** court considered several other methods of delineating meritorious claims from those not allowed under Tennessee law, such as the physical manifestation rule, the zone of danger rule, the foreseeability approach, and the general negligence approach. **Id.** at 440–443. Ultimately, the **Camper** court adopted the general negligence test, coupled with a requirement that the plaintiff's emotional injuries be serious or severe. Accordingly, the **Camper** court adopted the following rule:

> [T]he plaintiff must present material evidence as to each of the five elements of general negligence—duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause. . . in order to avoid summary judgment. Furthermore, we agree that in order to guard against trivial or fraudulent actions, the law ought to provide a recovery only for "serious" or "severe" emotional injury. . . . A "serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." . . . Finally, we conclude that the claimed injury or impairment must be supported by expert medical or scientific proof. . . .

**Camper**, 915 S.W.2d at 446 (citations omitted). Thus, a plaintiff raising an NIED claim must present evidence regarding the essential elements of negligence, as well as a severe or serious emotional injury. The injury element is subject to a heightened standard of proof requiring expert medical or scientific evidence to support the injury. **Id.**

In reaching this result, the **Camper** Court noted the policy that would guide the Tennessee Supreme Court and this Court for the next thirty years: to avoid arbitrary rules that eliminate otherwise meritorious NIED claims. Indeed, the Tennessee Supreme Court specifically noted it was rejecting the physical impact rule as "an arbitrary and inadequate means of reconciling the competing concerns of the law." **Camper**, 915 S.W.2d at 442. The Court specifically held that it and other similar requirements were "underinclusive" in that they "unfairly and arbitrarily exclude[] plaintiffs with meritorious claims of serious emotional injury." **Id.** With **Camper**, the Tennessee Supreme Court's first expansion of the tort of NIED was complete.

The doorway nudged open by the **Camper** court was soon enlarged. Less than a year after issuing its decision in **Camper**, the Tennessee Supreme Court authored a second opinion regarding NIED claims. See **Ramsey v. Beavers**, 931 S.W.2d 527, 530 (Tenn. 1996). In **Ramsey**, the Tennessee Supreme Court expressly recognized a new class

of NIED claims—bystander claims. The plaintiff in **Ramsey** witnessed the death of his mother in an automobile accident. Unlike the plaintiff in **Camper**, however, the **Ramsey** plaintiff was not involved in the accident and therefore was not a victim of the defendant's negligence except to the extent of his emotional injuries resulting from witnessing his mother's death. **Id.** The Tennessee Supreme Court again applied the general negligence test, reaffirming that such a test is intended to "dissolve rigid, often nonsensical . . . requirements." **Id.** at 531.

The **Ramsey** court therefore held that, in a bystander case, the plaintiff must establish, in addition to the essential elements of negligence, that the defendant's negligence was the cause in fact and proximate cause of the third party's death or serious injury "*as well as* plaintiff's emotional injury." **Id.** In this regard, both the third party's injury and the plaintiff's emotional injury must be the "proximate and foreseeable results of [the] [tortfeasor's] negligence." **Id.** Particularly instructive was the **Ramsey** court's discussion of the foreseeability prong of the general negligence test:

> Establishing foreseeability, and therefore a duty of care to plaintiff, requires consideration of a number of relevant factors. The plaintiff's physical location at the time of the event or accident and awareness of the accident are essential factors. Obviously, it is more foreseeable that one witnessing or having a sensory observation of the event will suffer effects from it. As has been explained:
>
> > The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.
>
> **Thing v. La Chusa**, 48 Cal.3d 644, 257 Cal. Rptr. 865, 879, 771 P.2d 814, 828 ([Cal.] 1989). Thus, plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff.

**Ramsey**, 931 S.W.2d at 531 (footnote omitted). In determining the foreseeability of the plaintiff's emotional injuries, the Tennessee Supreme Court also directed that courts should consider the degree of injury to the third person and noted that a compensable emotional injury most likely occurs "'[w]hen confronted with accidental death[.]'" **Id.** (quoting **Portee v. Jaffee**, 84 N.J. 88, 417 A.2d 521, 528 (N.J. 1980)). Finally, the **Ramsey** court indicated that another significant factor was the "plaintiff's relationship to the injured third party." **Ramsey**, 931 S.W.2d at 531.

- 9 -

The next NIED case considered by the Tennessee Supreme Court was *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997). In *Bain*, a patient sued the defendant medical providers for NIED alleging that he was emotionally injured when he was placed in the same hospital room with another patient infected with human immunodeficiency virus ("HIV") without giving warning or obtaining consent. *Id.* at 620. The defendant medical providers filed a motion for summary judgment, arguing, *inter alia*, that the plaintiff patient was not actually exposed to HIV and should have had no reasonable fear of contracting the virus. *Id.* at 621. The trial court denied the motion for summary judgment but allowed the defendant to seek an interlocutory appeal. *Id.* The Court of Appeals granted the interlocutory appeal but affirmed the trial court's judgment. *Id.* The Tennessee Supreme Court disagreed, reaffirming a 1993 case in which it had held that in order to recover for emotional damages resulting from negligent exposure to HIV, the plaintiff must show "actual exposure to HIV." *Id.* at 624 (citing *Carroll v. Sisters of Saint Francis*, 868 S.W.2d 585 (Tenn. 1993)). In reaching this result, the Tennessee Supreme Court held that an individual's fear of contracting HIV is not reasonable "unless the plaintiff actually has been *exposed* to HIV." *Bain*, 936 S.W.2d at 624 (footnote omitted). The Court noted that its rule was based upon the public policy consideration that to allow NIED claims even where an individual "may have been exposed to HIV" would be to "open a Pandora's Box of 'AIDS-phobia' claims by individuals whose ignorance, unreasonable suspicion or general paranoia cause them apprehension over the slightest of contact with HIV-infected individuals or objects." *Id.* at 624 (quoting *Brzoska v. Olson*, 668 A.2d 1355, 1363 (Del. 1995)). Because of the undisputed medical evidence that the plaintiff patient was not actually at risk of contracting HIV during his stay in the hospital, the Tennessee Supreme Court concluded that the plaintiff failed to establish the essential element of proximate cause to support his NIED claim. *Bain*, 936 S.W.2d at 625–26.

The Tennessee Supreme Court was again called upon to clarify the law concerning NIED in 2001 in *Estate of Amos v. Vanderbilt University*, 62 S.W.3d 133 (Tenn. 2001). In *Estate of Amos*, a patient sued the defendant hospital for NIED based upon emotional damages she suffered after being infected with HIV during a blood transfusion in 1984 and never informed about the possible infection. *Id.* at 135. Years after her exposure, the patient learned of her infection when her child contracted HIV in utero and died as a result. *Id.* The patient and her husband sued the defendant hospital for wrongful birth, failure to warn, and NIED. Ultimately, a jury awarded the plaintiffs substantial damages. *Id.* at 136. The Court of Appeals, however, reversed, holding that the NIED claim failed as a matter of law due to plaintiffs' failure to present expert medical proof of serious or severe emotional injury, i.e., the plaintiffs' failure to meet the heightened proof standard outlined in *Camper*. *Id.* Ultimately, the Tennessee Supreme Court reversed the Court of Appeals and held that, where a plaintiff raises other claims that include requests for damages for emotional injuries, such as the failure to warn claim averred by the plaintiffs in *Estate of Amos*, the plaintiff's NIED claim is parasitic to his or her other claims and need not be supported by expert proof. *Id.* at 137. As such, only "standalone" NIED

- 10 -

claims need be supported by expert proof on the issue of the plaintiff's severe or serious emotional injury.

Another NIED case was heard by the Tennessee Supreme Court in 2004. *See Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004). In *Lourcey*, the plaintiff mail carrier witnessed a man shoot his wife and then commit suicide. *Id.* at 50. The plaintiff then sued the estate of the perpetrator for intentional and negligent infliction of emotional distress. The trial court dismissed the NIED claim because the plaintiff was not closely associated with the victim or perpetrator. *Id.* The Tennessee Supreme Court, however, reversed the judgment of the trial court, holding that "the element of foreseeability does not require a plaintiff to establish a relationship to the injured third party." *Id.* at 53 (citing *Thurmon v. Sellers*, 62 S.W.3d 145, 163 (Tenn. Ct. App. 2001)). Instead, the key factors in establishing the foreseeability of the plaintiff's emotional injuries "are whether a plaintiff's proximity to the injury-causing event allowed for 'sensory observation' and whether the injury 'was, or was reasonably perceived to be, serious or fatal.'" *Lourcey*, 146 S.W.3d at 53 (quoting *Thurmon*, 62 S.W.3d at 163). Accordingly, the Tennessee Supreme Court concluded that the plaintiff's NIED claim could proceed even in the absence of a close relationship between the plaintiff and the victim, where the plaintiff directly observed the death of the victim and the perpetrator "knew that [the plaintiff] was in close physical proximity[.]" *Lourcey*, 146 S.W.3d at 53.

Several years passed until another NIED case was considered by the Tennessee Supreme Court. In 2008, however, the Tennessee Supreme Court again took up the question of the appropriate parameters of NIED claims in *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008). In *Eskin*, the plaintiffs alleged that they suffered severe emotional injuries after they observed a close family member "lying in a pool of blood" and "lifeless" after an automobile accident. The injured child suffered permanent injuries as a result of the accident. Eventually, the plaintiffs sued, and the defendant insurance company filed a motion for partial summary judgment seeking to dismiss the plaintiffs' NIED claims. The trial court granted the motion for partial summary judgment because it was undisputed that the plaintiffs were not present when the accident occurred and therefore "did not 'observe the accident occur through one of . . . [their] senses.'" *Id.* at 731 (quoting the trial court's order). The Court of Appeals reversed, holding that sensory observation of the injury producing event was not an absolute prerequisite to an NIED claim. *Id.* (citing *Eskin v. Bartee*, No. W2006-01336-COA-R3-CV, 2006 WL 3787823 (Tenn. Ct. App. Dec. 27, 2006)).

In determining the issue before it, the Tennessee Supreme Court first considered the increasing recognition of the tort of NIED not only in Tennessee, but elsewhere across the country. In Tennessee particularly, the *Eskin* court characterized the trend with regard to NIED claims as a "dilution" of the harsh requirements previously imposed in favor of permitting recovery in increasingly broad circumstances. *Eskin*, 262 S.W.3d at 734–35 (noting that "the direction of the development of the law . . . relating to negligent

- 11 -

infliction of emotional distress claims has been to enlarge rather than to restrict the circumstances amenable to the filing of a negligent infliction of emotional distress claim"). As the Tennessee Supreme Court noted: "The courts have not hesitated to permit the recovery of damages for negligent infliction of emotional distress when justice and fairness require it." *Id.* at 738. The Court noted, however, the overarching "'desire to separate, at the prima facie stage and in a meaningful and rational manner, the meritorious cases from the nonmeritorious ones.'" *Id.* at 734 (quoting *Camper*, 915 S.W.2d at 445). The *Eskin* court therefore distilled the holding in *Ramsey* to four "objective standards" to be utilized by courts in determining whether to allow NIED claims to proceed beyond summary judgment, namely: (1) the "'plaintiff's physical location at the time of the . . . accident'"; (2) the plaintiff's "'awareness of the accident'"; (3) "the apparent seriousness of the victim's injuries"; and (4) "[t]he closeness of the relationship between the plaintiff and the victim." *Eskin*, 262 S.W.3d at 736 (quoting *Ramsey*, 931 S.W.2d at 531).

In applying these factors, the Tennessee Supreme Court concluded that the plaintiff parent in *Eskin* should be permitted to pursue her claim for NIED. In reaching this result, the Court noted that, unlike in *Camper* or *Lourcey*, the plaintiff had a close familial relationship with the victim. *Eskin*, 262 S.W.3d at 738. While this factor strongly militated in favor of allowing the plaintiff to pursue her claim, another factor militated against that result: the fact that the plaintiff "did not see or hear the automobile strike her son." *Id.* Nevertheless, the Tennessee Supreme Court concluded that the plaintiff's proximity to the "injury-producing incident" was sufficient under *Ramsey*'s objective standards because the plaintiff was "able to arrive at the accident scene quickly before it had significantly changed and before the injured person had been moved." *Id.* As the Court explained:

> In other words, while the bystanders did not have a sensory perception of the accident as it occurred, they had a direct sensory perception of the accident scene and the results of the accident soon after the accident occurred. In this circumstance, we have determined that it is appropriate and fair to permit recovery of damages for the negligent infliction of emotional distress by plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident.

*Id.*

The *Eskin* court specifically noted two important considerations that led to this conclusion. First, the Court noted that it has been "historically recognized" that severe emotional injuries to individuals are "easily foreseeable" where the plaintiff has a "close personal relationship with an injured party." *Id.* (citing *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521, 526 (N.J. 1980) ("The law should find more than pity for one who is stricken

by seeing that a loved one has been critically injured or killed."). Second, the Court noted "the lack of a principled basis to differentiate between a parent who sees or hears the accident that seriously injures or kills his or her child and a parent who sees his or her injured or dead child at the scene shortly after the accident." *Eskin*, 262 S.W.3d at 739. Indeed, the Court recognized that "other courts" have likewise failed to make a distinction under similar circumstances. *Id.* at 739 n.29 (citing cases).

Finally, in *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521 (Tenn. 2008), the Tennessee Supreme Court again considered the requirement of expert proof to support "standalone" NIED claims. In *Flax*, the plaintiff mother filed an NIED claim in conjunction with the wrongful death lawsuit filed on behalf of her son, who allegedly died due to the defendant's defective product. *Id.* at 526. The mother argued that she was not required to support their NIED claims with expert proof of severe or serious emotional injuries because their NIED claims were parasitic to the wrongful death claim. *Id.* at 529. The Tennessee Supreme Court disagreed, holding that because a wrongful death claim "belong[s] to the decedent, not the decedent's beneficiaries," the wrongful death claim could not be considered a personal claim of the mother. *Id.* at 530. Because the only personal claim raised by the mother was her NIED claim, the Tennessee Supreme Court concluded that the NIED claim was a standalone claim subject to the heightened proof requirements of *Camper*. *See also Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 207–08 (Tenn. 2012) (providing guidance as to what constitutes a severe mental injury for purposes of both intentional and negligent infliction of emotional distress, but only addressing the plaintiff's intentional infliction of emotional distress claim as it was the only emotional injury claim at issue).

Based on more than a decade of NIED jurisprudence, legal scholars have delineated two types of NIED claims recognized in Tennessee. *See* John A. Day, *NIED Claims After* Flax *and* Eskin, Tenn. B.J., Jan. 2009, at 33. The first type of NIED claim involves situations in which "the plaintiff suffers emotional injury because of the negligence of another." *Id.* Of the above cases, whether successful or not, *Camper* and *Bain* most likely fall into the first category. The second type of NIED claim addresses situations where "the plaintiff suffers emotional injury because the negligence of another caused an injury or death to a third person and that in turn caused emotional injury to the plaintiff." *Id.* The situations in *Ramsey*, *Loucey*, *Eskin*, and *Flax*, regardless of their ultimate outcome, fall within this second category. *Estate of Amos* appears to fall within both categories.[3] Bystander claims, however, may be further divided into two additional

---

[3] Specifically, as to the plaintiff patient, she was both infected with HIV and witnessed her infant daughter die of a complication from the virus. *Estate of Amos*, 62 S.W.3d at 135. Likewise, although not ultimately infected, the plaintiff husband in *Amos* was also exposed to HIV and witnessed the death of his child. *Id.* During trial, the plaintiffs submitted evidence specifically concerning "the emotional impact of an AIDS diagnosis connected with the death of a child infected in utero." *Estate of Amos v. Vanderbilt Univ., Inc.*, No. M1999-00998-COA-R3-CV, 2000 WL 336733, at *3 (Tenn. Ct. App. Mar. 31, 2000), *rev'd sub nom. Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001). Both the patient's

- 13 -

categories: (1) the *Ramsey*-type claims, in which the bystander witnesses the injury-producing event as it occurs; and (2) the *Eskin*-type claims, in which the bystander witnesses the aftermath of the scene within a very short period of time after the injury-producing event had already occurred, and during which time the scene was not materially changed.

In this case, Appellants raise the first type of bystander claim—that they, as close relatives of their injured daughter, witnessed an injury-producing event that was the cause-in-fact and proximate cause of their daughter's serious injury and ultimate death. For purposes of summary judgment, there is no dispute that Appellants suffered a severe or serious injury, supported by expert proof. Here, Appellants' experts opined: (1) that the child's serious injury and death was the result of Vanderbilt's failure to provide appropriate care to the child; and (2) that the Appellants' injuries resulted from "the events at the hospital in March of 2013 leading up to [the child's] death."[4] Accordingly, as required by *Ramsey*, Appellants have presented prima facie evidence that Vanderbilt's negligence was the proximate and legal cause of both the child's injuries and death and Appellants' severe or serious emotional injuries.[5] *See Ramsey*, 931 S.W.2d at 531.

Vanderbilt argues, however, that despite the above expert proof, Appellants have failed to show that they witnessed an injury-producing event for purposes of serving as the predicate for their bystander NIED claim. Specifically, Vanderbilt argues that Appellants did not witness an injury-producing event "because there was no observable injury producing event during the medical care of [Appellants'] daughter." In support, Vanderbilt cites *Ramsey*, which favorably quoted a California case that stated a plaintiff must observe "the traumatic cause of the injury," rather than merely the "pain and suffering" resulting therefrom. *Id.* (quoting *Thing v. La Chusa*, 771 P.2d 814, 828 (Ca. 1988)).

We cannot agree, however, that this statement from *Ramsey* ends the inquiry in this case. For one, it must be noted that the "sensory observation" requirement relied upon by Vanderbilt from *Ramsey* was significantly relaxed in *Eskin*. *See generally Eskin*, 262 S.W.3d at 738. As previously discussed, the *Eskin* court held that a plaintiff need not actually observe the injury-producing event, so long as the plaintiff and the victim had a close relationship and the plaintiff came upon the scene of the accident before it was materially altered. *Id.* Moreover, the specific language cited by the *Ramsey*

_____

estate and her husband were awarded substantial damages, presumably as a result of damages due to both the child's exposure, as well as their own exposure, to the virus.

[4] There is no dispute that Appellants' NIED claims are "stand-alone" claims requiring the support of expert medical or scientific testimony on the issue of Appellants' serious or severe emotional injuries.

[5] At points, Vanderbilt's brief suggests that Appellants cannot meet this requirement. From our review, however, Vanderbilt's motion for partial summary judgment focused only on the issue of whether Appellants could show an injury-producing event. Accordingly, we will only focus on the causation requirement as it relates to this argument.

court is derived from a California case involving highly analogous facts to *Eskin*; it is significant to note, however, that rather than adopting the rule embraced by the California Supreme Court, the *Eskin* court came to the opposite conclusion. *Compare Thing*, 771 P.2d at 828 (holding that an NIED claim cannot lie where the plaintiff bystander comes upon the scene of an accident after the injury-producing event has concluded),[6] *with Eskin*, 262 S.W.3d at 738 ("[I]t is appropriate and fair to permit recovery of damages for [NIED] by plaintiffs who have a close personal relationship with an injured party and who arrive at the scene of the accident while the scene is in essentially the same condition it was in immediately after the accident.").

Even more importantly, however, Appellants assert that they did in fact witness an injury-producing event in this case—Vanderbilt's alleged negligence in failing to provide medical care to the child in the hours leading up to her cardiac arrest on March 24, 2013, or in Appellants' words, Vanderbilt's "multiple care failures." Vanderbilt disagrees, however, that the "inadequate medical care over a period of approximately [twelve] hours" is an injury-producing event for purposes of Appellants' NIED claim. Instead, Vanderbilt asserts that, to qualify as an injury-producing event, the event must be "a specific, identifiable injury-producing event or injury-causing event" rather than "a constellation of care." As we comprehend it, Vanderbilt essentially asserts that an injury-producing event cannot be a drawn-out series of failures but must essentially result from a sudden accident.

As an initial matter, we note that Vanderbilt cites no specific Tennessee law to support its view that alleged negligence over a period of time in the healthcare context cannot constitute an injury-producing event for purposes of an NIED claim. Indeed, from our research, no Tennessee cases have ever placed limitations on what constitutes an injury-producing event or ever adopted a broad rule disallowing NIED claims where the injury-producing event was alleged medical negligence. As such, we agree with Appellants that Vanderbilt asks this Court to impose new limitations on what constitutes an injury-producing event for purposes of an NIED claim.

---

[6] In *Thing*, the plaintiff mother arrived at the scene of an accident where she saw her "bloody and unconscious child, whom she believed was dead, lying in the roadway." *Id.* at 815. The mother, however, did not witness the accident that caused her child's injuries. The mother sued the driver for NIED. The California Supreme Court held, however, that to support a bystander NIED claim, the plaintiff must show as absolute prerequisites that the plaintiff: "(1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress[.]" *Id.* at 829–30. Because the plaintiff mother did not witness the accident that caused her son's injuries, her NIED claim could not lie. *Id.* at 830. Accordingly, the holding in *Thing* directly contradicts more expansive rules adopted by the Tennessee Supreme Court in both *Eskin* and *Lourcey*. *See Lourcey*, 146 S.W.3d at 153 (allowing an NIED claim to proceed even though the plaintiff bystander did not have a relationship of any kind with the victim).

- 15 -

Somewhat in line with Vanderbilt's argument, the dissent contends that this Court should adopt a rule disallowing bystander NIED claim unless the injury-producing event is "sudden [and] traumatic" in accordance with the rule adopted by the New Mexico Supreme Court in *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774, 777 (N.M. 1998). *See also Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. Ct. App. 2008) (noting the rule in *Fernandez*, but holding that the plaintiff did not allege an NIED claim). Whether Appellants' experience was traumatic appears to be without genuine dispute in this litigation. The term "trauma" is defined as "any emotionally painful experience." *Webster's New World College Dictionary* 1542 (5th ed. 2014). Taking the facts in the light most favorable to Appellants, we are simply unable to conclude that the experience of requesting care over a period of hours for the daughter and witnessing the lack of care lead to their daughter's cardiac arrest was not traumatic. *See Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999) (discussing the summary judgment standard).

We agree, however, that the alleged negligence that was witnessed by Appellants was not sudden. We also concede that many of the cases in which NIED claims have been recognized by the Tennessee Supreme Court involved accidents, often sudden ones. *See Eskin*, 262 S.W.3d at 731 (involving an automobile accident); *Ramsey*, 931 S.W.2d at 530 (same); *Camper*, 915 S.W.2d at 446 (same). Indeed, some of these cases refer to the injury-producing event as an "accident." *See Eskin*, 262 S.W.3d at 732 (framing the issue as "whether persons seeking to recover damages for the negligent infliction of emotional distress must be in sufficient proximity to the injury-causing *accident* to perceive the event with one of their senses") (emphasis added). *But see Ramsey*, 931 S.W.2d at 531 (discussing the requirement that the plaintiff witness the "event *or* accident") (emphasis added). We note, however, that the term accident does not denote only sudden injuries. Instead, the term is defined as "an unpleasant and unintended happening, sometimes resulting from negligence, that results in injury, loss, [or] damage[.]" *Webster's New World College Dictionary* 8 (5th ed. 2014). Likewise, an "event" is merely "a happening or occurrence[.]" *Webster's New World College Dictionary* 503 (5th ed. 2014).

As the dissent admits, to adopt a sudden occurrence rule would be to impose a new limitation on Tennessee NIED jurisprudence that has never before been recognized. Indeed, Tennessee courts have previously considered NIED claims that were not predicated on sudden or accidental torts. For example, in *Lourcey*, the plaintiff's emotional injuries were not the result of an accident, but instead were based upon the perpetrator's intentional action of committing murder and suicide while the plaintiff was present. *Lourcey*, 146 S.W.3d at 153. Likewise in *Estate of Amos*, the injury-producing event alleged was the medical provider's failure to inform the plaintiff patient that she was exposed to HIV through a blood transfusion and the resulting wrongful birth of the plaintiffs' daughter. *Estate of Amos*, 62 S.W.3d at 137. While the medical provider's action can certainly be categorized as negligent, failure to warn over a period of years and

wrongful birth due to HIV exposure years earlier simply does not constitute a sudden "accident" as Vanderbilt suggests.[7]

Nevertheless, the dissent suggests that we adopt the rule in *Fernandez* and hold that a series of failures over a specific period of time cannot constitute an injury-producing event for purposes of a bystander NIED claim. Respectfully, we cannot agree. In the first instance, the *Fernandez* Court specifically relies on California jurisprudence as support for its narrow rule. *See Fernandez*, 968 P.2d at 777 (citing *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 914 (Cal. 1968)). California, however, does

_____

[7] In non-bystander cases, negligence that cannot be categorized as resulting from a sudden accident, but instead from a series of negligent actions or inactions, has often served as the predicate tort for an NIED claim. For example in *Bain*, the plaintiff's NIED claim arose from the defendant hospital's decision to place the plaintiff in a room with an individual infected with HIV. *See Bain*, 936 S.W.2d at 624. The Tennessee Supreme Court rejected the NIED claim not because the plaintiff did not allege a sudden accident as the negligence that led to the plaintiff's emotional injuries, but because the plaintiff presented no evidence that he had actually been exposed to HIV. The Tennessee Supreme Court therefore concluded that a reasonable person would not suffer severe or serious emotional disturbance in that situation, in part based upon public policy considerations. *Id.* At least one case from this Court has recognized a direct NIED claim where the plaintiff was not the victim of a sudden accident, but a series of negligent failures on the part of the defendant. *See Riley v. Whybrew*, 185 S.W.3d 393, 400 (Tenn. Ct. App. 2005) (reversing the dismissal of plaintiffs' NIED claim predicated on defendant landlord's negligent failure to take action against tenants who harassed plaintiffs over a number of months).

In other cases, this Court has considered similar non-bystander claims based on negligent series of events, but has ultimately denied those claims based on other deficiencies. *See, e.g., Bonanno v. Faris*, No. 2010-02326-COA-R3CV, 2011 WL 3274121, at *3 (Tenn. Ct. App. Aug. 1, 2011) (involving an NIED claim predicated on a series of calls made by the defendant court reporter to collect an alleged debt; affirming dismissal of NIED claim based upon failure of expert medical or scientific proof); *Durbin v. Sumner Cty. Reg'l Health Sys., Inc.*, No. M2000-02109-COA-R3-CV, 2001 WL 1013071, at *10 (Tenn. Ct. App. Sept. 6, 2001) (involving an NIED claim based upon the medical provider's failure to properly diagnose and treat a pregnant woman over a number of days which allegedly led to the death of her twins in utero; affirming dismissal of NIED claim based upon failure of expert medical or scientific proof); *Miller v. Willbanks*, No. 03A01-9709-CV-00411, 1998 WL 270428, at *4 (Tenn. Ct. App. May 28, 1998), *rev'd on other grounds*, 8 S.W.3d 607 (Tenn. 1999) (involving an NIED claim based on the defendant medical providers repeated questioning of mother regarding drug use during pregnancy despite negative drug screens having been performed; affirming dismissal of NIED claim based upon failure of expert medical or scientific proof); *Bruce v. Olive*, No. 03A01-9509-CV-00310, 1996 WL 93580, at *5 (Tenn. Ct. App. Mar. 4, 1996) (involving an NIED claim predicated on the defendant attorney's failure to act over a period of months; affirming dismissal of NIED claim based upon lack of causation between attorney's alleged negligence and plaintiffs' emotional injuries). Importantly, neither this Court nor the Tennessee Supreme Court has ever expressly held only certain types of negligence may sustain bystander NIED claims, while allowing the negligence that causes a direct NIED claim to run the gamut from sudden events to nonfeasance over a period of time.

not follow the rule espoused in *Fernandez*. Instead, the "sudden occurrence" rule was expressly rejected in ***Ochoa v. Superior Court***, 39 Cal. 3d 159, 703 P.2d 1 (Cal. 1985) (discussed in detail, *infra*), as being an arbitrary restriction on otherwise meritorious NIED claims.[8] *Id.* at 6–7. Although the sudden occurrence rule continues to be viable in New Mexico, *see **Castillo***, 195 P.3d at 876, it does not appear to be applied in other jurisdictions. *See also **Armstrong v. A.I. Dupont Hosp. for Children***, 60 A.3d 414, 417 (Del. Super. Ct. 2012) (allowing an NIED claim based upon a series of events that led to the victim's injuries).

Most importantly, however, the Tennessee Supreme Court has expressly rejected other rules that would limit NIED recovery because they were arbitrary restrictions on otherwise meritorious NIED claims. *See **Camper***, 915 S.W.2d at 442. The same is true of the sudden occurrence rule as applied to this case. Here, there can be no dispute that Appellants were present and witnessed a series of events where Vanderbilt promised to provide specific care to the child, all the while failing to provide the promised care. Appellants' experts have opined that Vanderbilt's failure was negligent and that it led both to the child's death and to Appellants' severe emotional injuries. In fact, these facts clearly distinguish the case-at-bar from ***Fernandez***, as the alleged negligence in that case occurred when the defendant pharmacist misfilled the child's prescription, an event not witnessed by the plaintiff, as well as the child "going untreated without anyone realizing it at the time." ***Fernandez***, 968 P.2d at 780. The New Mexico Supreme Court therefore held that because the plaintiff could not "point to a moment in time at which the sudden, traumatic, injury-producing event occurred, then we must assume that [p]laintiff's shock and emotional distress resulted instead from witnessing the suffering and death of the victim, which, although tragic, is not compensable under NIED." ***Fernandez***, 968 P.2d at 780.

In contrast, the record in this case shows that Appellants were becoming distressed by what they perceived as Vanderbilt's failure to care for their daughter over a period of approximately twelve hours. Accordingly, Appellants did realize at the time that their daughter was going untreated, unlike in ***Fernandez***. Additionally, we need not make an assumption as to the cause of Appellants' emotional injuries because there is expert proof in the record that Appellants' emotional injuries resulted not just from the death of their daughter, but from the events at Vanderbilt on March 23 and March 24, 2013. In reaching

---

[8] For this reason, there are some concerns as to whether the rule pressed by the dissent was even argued by Vanderbilt in this case. Vanderbilt does not rely on the cases used by the dissent to support its view. Instead, one of Vanderbilt's central contentions is that this Court should adopt a rule in line with the California Supreme Court's rule in ***Bird v. Saenz***, 51 P.3d 324 (Cal. 2002) (discussed in detail *infra*). California, however, specifically rejected the rule adopted by the New Mexico Supreme Court. *See **Ochoa***, 703 P.2d at 6–7. Because Vanderbilt urges this Court to follow California jurisprudence, it does not specifically argue that this Court also adopt a rule that is at odds with California law.

this conclusion regarding the cause of Appellants' injuries, two experts expressly pointed to the worry caused by Vanderbilt's failure to provide care to the child.

Given these harrowing facts, the dissent repeatedly notes that it is sympathetic to Appellants in this case. We certainly do not question our colleague's genuine sympathy for Appellants' plight. The dissent, however, chooses to arbitrarily eliminate Appellants' NIED claim simply because what Appellants witnessed was apparently not an identifiable, sudden, traumatic event. Instead, plaintiffs with bystander NIED claims must not only witness injury-producing events, under the dissent's proposed rule, the injury-producing event must ostensibly be singular and occur suddenly. Defendants whose negligence occurs repeatedly or over a period of time before an injury occurs are seemingly shielded from liability under the dissent's suggested rule, even when the plaintiff is present and witnesses the negligence. Such a rule is clearly contrary to not only the precedent set by the Tennessee Supreme Court in *Estate of Amos*, but also our supreme court's recognition that negligence occurs not only through misfeasance, but also nonfeasance when the defendant has an affirmative duty to act. *See generally Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355–59 (Tenn. 2008) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed.1984)) (defining nonfeasance as "passive inaction or a failure to take steps to protect [a third-party] from harm"); *see also Church v. Perales*, 39 S.W.3d 149, 164 (Tenn. Ct. App. 2000) ("While the physician-patient relationship exists, the physician has a duty to continue providing care."). As such, the sudden occurrence rule constitutes little more than an attempt to insulate negligent defendants from the foreseeable results of their negligence. Clearly, to adopt such a rule would be to conflict with the Tennessee Supreme Court's clear policy to allow meritorious claims when the other elements of the NIED tort are met. *See Camper*, 915 S.W.2d at 442; *Ramsey*, 931 S.W.2d at 531; *Eskin*, 262 S.W.3d at 738.

In the absence of any Tennessee decisions providing guidance on what constitutes an injury-producing event for purposes of a bystander NIED claim, Vanderbilt next urges this Court to adopt the reasoning and rule espoused by the California Supreme Court in *Bird v. Saenz*, 51 P.3d 324 (Cal. 2002). In *Bird*, the plaintiffs sued the defendant medical providers for NIED related to healthcare received by the patient, the plaintiffs' mother. According to the complaint, one plaintiff accompanied her mother to the hospital for the insertion of a Port-A-Cath to facilitate intravenous chemotherapy treatments. *Id.* at 325. The plaintiff was not present during the procedure, which was expected to take around twenty minutes. An hour later, the plaintiff heard over the loud speaker that a thoracic surgeon was needed "stat." *Id.* The plaintiff assumed the call was related to her mother due to her belief that all other surgeries had been completed. *Id.* More than an hour later, a physician came to the waiting room to inform the plaintiff that they had trouble inserting the Port-A-Cath, which may have resulted in a mild stroke. *Id.* at 325–26. Eventually, the plaintiff observed medical providers rushing her mother down the hall to the critical care unit. According to the plaintiff, her mother was "bright blue." *Id.* The

plaintiff's mother was placed in a closed room while plaintiff remained in the hallway, where the plaintiff was informed that her mother's artery had been nicked and where she observed a doctor running down the hall carrying multiple units of blood. *Id.* at 926.The second plaintiff, also the daughter of the patient, arrived in time to observe her mother again rushed from the room to surgery, still "blue." *Id.* According to the California Supreme Court, the above "are the events on which plaintiffs base their claim for NIED." *Id.*[9]

The defendant medical providers filed a motion for summary judgment with regard to plaintiffs' NIED claims. The defendants argued that the plaintiffs had not been present in the operating room at the time their mother's injury occurred but rather had learned about the alleged negligence only after it had occurred. *Id.* In response, the plaintiffs admitted that they had not been present in the operating room but asserted that the injury-producing event at issue included not only the negligence that occurred during the operation but also "defendants' failure immediately to diagnose and treat the damaged artery." Plaintiffs also asserted that they "were all aware that [d]efendants . . . were causing injury to their mother[.]" *Id.*

The trial court granted the defendants' motion for summary judgment. *Id.* at 327. The California Court of Appeals reversed, concluding that the plaintiffs had presented evidence sufficient for purposes of summary judgment that they witnessed an injury-producing event. *Id.* The California Supreme Court thereafter granted permission to appeal and began its analysis, like Tennessee courts, by first considering the historical journey of NIED claims in California jurisprudence. The Court noted that, under California's *Thing* Opinion, the plaintiff's presence "at the scene of the injury-producing event at the time it occurs" and the plaintiff's awareness that "it is causing injury to the victim" are absolute prerequisites to NIED recovery in bystander cases. *Id.* (citing *Thing*, 771 P.2d at 828).

The defendants in *Bird* argued that the plaintiffs met neither of these requirements. The *Bird* court quickly disposed of any assertion that plaintiffs could prevail as to any NIED related to the nick of their mother's artery, as the plaintiffs were not present when that event occurred. *Id.* at 328. According to the court, viewing "'the injurious consequences of [the defendants'] conduct' rather than . . . the injury-producing event, itself," was simply insufficient to support an NIED bystander claim. *Id.* (quoting *Thing*, 771 P.2d at 828). The plaintiffs claimed, however, that they were contemporaneously aware of defendants' failure to treat their mother's injury while it was occurring. Accordingly, the plaintiff's argued that the requirements in *Thing* had been met. *Bird*, 51 P.3d at 328.

---

[9] The plaintiffs' mother's bleeding was stopped during emergency surgery and she was discharged from the hospital over a month later. *Id.*

The California Supreme Court disagreed that the requirements set forth in **Thing** had been met. As the Court explained:

> The problem with defining the injury-producing event as defendants' failure to diagnose and treat the damaged artery is that plaintiffs could not meaningfully have perceived any such failure. Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders. Here, what plaintiffs actually saw and heard was a call for a thoracic surgeon, a report of [the mother] suffering a possible stroke, [the mother] in distress being rushed by numerous medical personnel to another room, a report of [the mother] possibly having suffered a nicked artery or vein, a physician carrying units of blood and, finally, [the mother] still in distress being rushed to surgery. Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event—the transected artery—had occurred, they had no basis for believing that another, subtler event was occurring in its wake.

*Id.* at 328–29. In reaching this decision, the California Supreme Court relied on earlier California cases where "courts have not found a layperson's observation of medical procedures to satisfy the requirement of contemporary awareness of the injury-producing event." *Id.* at 329 (citing **Meighan v. Shore**, 34 Cal. App. 4th 1025, 40 Cal. Rptr. 2d 744 (Cal. Ct. App. 1995) (holding that wife had no NIED claim where she, as a trained nurse, witnessed signs of an undiagnosed heart attack in her husband, where initial testing was to the contrary); **Breazeal v. Henry Mayo Newhall Mem'l Hosp.**, 234 Cal. App. 3d 1329, 286 Cal. Rptr. 207 (Cal. Ct. App. 1991) (holding that the plaintiff's contemporaneous awareness of the defendants' unsuccessful efforts to restore her son's breathing did not constitute an injury-producing event because there was no evidence that the physican's actions were actually injury-producing, or rather merely attempts to ameliorate an existing injury); **Wright v. City of Los Angeles**, 219 Cal. App. 3d 318, 268 Cal. Rptr. 309 (Cal. Ct. App. 1990) (holding that the relative did not witness and comprehend an injury-producing event when he watched a paramedic examine the patient, but the paramedic failed to detect signs of sickle cell shock); **Golstein v. Superior Court**, 223 Cal. App. 3d 1415, 273 Cal. Rptr. 270 (Cal. Ct. App. 1990) (holding that parents could not make out an NIED claim where they watched their child undergo radiation therapy but only learned later than he had been lethally overexposed)). Because the rule adopted by the court in **Thing** required that the plaintiff "be aware of the connection between the injury-producing event and the injury," the Court held that "unperceived medical errors hidden in a course of treatment" could not serve as an injury-producing event for purposes of the NIED claims. **Bird**, 51 P.3d at 331. As such, the California Supreme Court affirmed the trial court's decision to grant summary judgment in favor of the defendants on the plaintiffs' NIED claims. *Id.* at 331–32.

Vanderbilt argues that this Court, like the trial court, should adopt the rule set forth in ***Bird*** and hold, as a matter of law, that the events witnessed by Appellants in this case do not constitute an injury-producing event for purposes of an NIED claim. In some respects, we agree with Vanderbilt that the rule espoused in ***Bird*** is in accord with existing Tennessee law. First, we note that Tennessee law generally requires that medical negligence be proven by experts rather than lay persons. *See **Osunde v. Delta Med. Ctr.***, 505 S.W.3d 875, 880 (Tenn. Ct. App. 2016) (quoting ***Graniger v. Methodist Hospital Healthcare Systems, Inc.***, No. 02A01-9309-CV-00201, 1994 WL 496781, at *3 (Tenn. Ct. App. Sept. 9, 1994) (discussing the distinction between ordinary negligence and medical malpractice); *see also* Tenn. Code Ann. § 29-26-115(b) (requiring that a competent expert testify as to the standard of care, breach, and causation elements of a healthcare liability action). Additionally, as previously noted, the Tennessee Supreme Court in ***Ramsey*** required that the defendant's negligence cause the plaintiff bystander's emotional injuries, rather than simply the injury to the victim causing emotional harm to the plaintiff. ***Ramsey***, 931 S.W.2d at 531. Therefore, ***Bird's*** rule that the plaintiff understand that the defendant is causing harm to the victim appears to coincide with ***Ramsey's*** causation requirements, except in those situations where the plaintiff's claim falls within the narrow rule recognized in ***Eskin***. *See **Eskin***, 262 S.W.3d at 738 (allowing an NIED claim to go forward although the plaintiff mother simply could not have been contemporaneously aware that the defendant's negligence was causing her daughter's injuries because she was not present at the time the injury took place). On the other hand, however, the decision in ***Bird*** is predicated in large part on the California Supreme Court's holding in ***Thing***. As previously discussed, however, the Tennessee Supreme Court has expressly rejected such a narrow view of NIED claims. ***Id.*** Moreover, Tennessee's NIED jurisprudence is far more relaxed than that adopted by California courts, as both the need to be present for the injury causing event and the need to be closely related to the victim have been eased in certain situations. *See **Lourcey***, 146 S.W.3d at 153; ***Eskin***, 262 S.W.3d at 738.

Even if we were to adopt the rule espoused in ***Bird***, however, we conclude that it would not prove fatal to Appellants' NIED claim based on the particular facts of this case. As an initial matter, we note that even the California Supreme Court in ***Bird*** indicated that some forms of medical malpractice may serve as the predicate tort for an NIED claim. As the ***Bird*** court explained:

> This is not to say that a layperson can never perceive medical negligence, or that one who does perceive it cannot assert a valid claim for NIED. To suggest an extreme example, a layperson who watched as a relative's sound limb was amputated by mistake might well have a valid claim for NIED against the surgeon. Such an accident, and its injury-causing effects, would not lie beyond the plaintiff's understanding awareness. But the same cannot be assumed of medical malpractice generally.

- 22 -

***Bird***, 51 P.3d at 329. By way of illustration, the ***Bird*** court cited a prior California Supreme Court case in which the plaintiffs' NIED claim was allowed to proceed despite involving medical negligence. *See **Ochoa v. Superior Court***, 39 Cal. 3d 159, 703 P.2d 1 (Cal. 1985). In ***Ochoa***, the plaintiff parents sued the defendant juvenile hall for NIED after the death of their son. It was undisputed that the mother was present at the juvenile hall, where she witnessed son's severe symptoms, including his excruciating pain. ***Id.*** at 3–4. Although the mother repeatedly requested that her son receive additional medical care, including that she be allowed to take him to her personal physician, her requests were denied, and she was ultimately forced to leave the juvenile hall. ***Id.*** at 4. The son died in the overnight hours. ***Id.*** Based upon these facts, the ***Ochoa*** Court held that the mother could make out a bystander NIED claim. In reaching this result, the California Supreme Court expressly rejected the defendants' argument that the child's injuries had to result from a brief and sudden occurrence. ***Id.*** at 6–7 (holding that the "sudden occurrence" requirement was "an unwarranted restriction" that "arbitrarily limits liability when there is a high degree of foreseeability of shock to the plaintiff and the shock flows from an abnormal event, and, as such, unduly frustrates the goal of compensation—the very purpose which the cause of action was meant to further"). Because the mother "was aware of and observed conduct by the defendants which produced injury in her child," and had knowledge that "the defendants had failed to provide the necessary care," the ***Ochoa*** Court held that she had sufficiently alleged that she witnessed an injury-producing event for purposes of her NIED claim. ***Id.*** at 7.

The ***Bird*** court specifically contrasted the facts before it with ***Ochoa***, describing the injury producing event in ***Ochoa*** as "the failure of custodial authorities to respond significantly to symptoms obviously requiring immediate medical attention." ***Bird***, 51 P.3d at 330. The court therefore characterized the holding in ***Ochoa*** as allowing the mother to pursue her NIED claim because she "observed the neglect and recognized it as harming her son." ***Id.*** In reaching its result, the court distinguished the facts before it, in which the alleged injury-producing event was the ***Bird*** mother's "misdiagnosis, unsuccessful treatment, or treatment that turns out to have been inappropriate only in retrospect," as opposed to the "failure to provide medical assistance" which form of negligence "is not necessarily hidden from the understanding awareness of a layperson." ***Id.*** Accordingly, the ***Bird*** court indicated that its holding and the holding in ***Ochoa*** were reconcilable.

More recent caselaw has expressly acknowledged that California does not "categorically bar plaintiffs who witness acts of medical negligence from pursuing NIED claims." ***Keys v. Alta Bates Summit Medical Center***, 235 Cal. App. 4th 484, 489, 185 Cal. Rptr. 3d 313, 318 (2015), *reh'g denied* (Mar. 11, 2015). In ***Keys***, the plaintiff daughters were present when their mother experienced difficulty breathing following thyroid surgery. ***Id.*** As the Court explained:

[Plaintiffs] observed inadequate efforts to assist [their mother's] breathing, and called for help from the respiratory therapist, directing him at one point to suction her throat. They also directed hospital staff to call for the surgeon to return to [their mother's] bedside to treat her breathing problems. These facts could be properly considered by the jury to demonstrate that plaintiffs were contemporaneously aware of [their mother's] injury and the inadequate treatment provided her by defendant.

*Id.* As such, the California Court of Appeals held that the plaintiffs had contemporaneous awareness of an injury-producing event sufficient to sustain their NIED claims. *Id.* ("The injury-producing event here was defendant's lack of acuity and response to [their mother's] inability to breathe, a condition plaintiffs observed and were aware was causing her injury.").

Other courts have likewise held that NIED claims premised on medical negligence can go forward if: "the victim was (1) a marital or intimate family member of the claimant, and that the claimant (2) witnessed the malpractice, and (3) immediately connected or associated the malpractice with the injury, and (4) as a result, suffered severe emotional distress." **Gendek v. Poblete**, 139 N.J. 291, 300, 654 A.2d 970, 974 (1995) (citing **Frame v. Kothari**, 115 N.J. 638, 560 A.2d 675 (N.J. 1989)) (holding that a misdiagnosis is insufficient to support a claim for NIED because there was no "close temporal connection between the misdiagnosis and the injury, as well as the contemporaneous observation of the injury by the family member"); *see also* **Squeo v. Norwalk Hosp. Ass'n**, 316 Conn. 558, 578, 113 A.3d 932, 945 (Conn. 2015) (allowing NIED recovery where the plaintiff witnessed "gross misconduct on the part of health care providers").

In our view, the facts in this case more closely align with those in **Ochoa**, rather than in **Bird**. Here, as in **Ochoa**, Appellants have not alleged a misdiagnosis as the cause of their child's injuries, but rather Vanderbilt's failure to treat their daughter. According to the undisputed facts in this case, Appellants were informed that a cardiology consultation had been ordered for their daughter. They watched helplessly, however, as the hours passed without this promised intervention, all the while as their daughter complained of shortness of breath and pain in her chest. The situation presented in this case is therefore highly analogous to **Keys**, where the plaintiff daughters were contemporaneously aware of their mother's difficulty breathing, as well as the defendant medical provider's failure to take action to treat her condition. **Keys**, 185 Cal. Rptr. 3d at 318. It is not a misdiagnosis or the failure of specific treatment that Appellants blame for the death of their child and their resulting emotional distress; rather, Appellants blame Vanderbilt's alleged failure to provide their child with medical assistance, which intervention, in the opinion of a qualified expert, would have saved the child's life. Because Appellants undisputedly witnessed this failure of treatment, we cannot conclude,

at the summary judgment stage, that they did not witness an injury-producing event for purposes of their NIED claim.

Regardless, Vanderbilt urges this Court to go further than even the ***Bird*** court and adopt a broad rule disallowing NIED claims in the medical negligence context. In support, Vanderbilt essentially argues that to allow Appellants' claims would be to open the flood gates to NIED cases in all healthcare liability cases and to force medical providers to prohibit family members from visiting hospital patients. In support, Vanderbilt cites caselaw from other jurisdictions which have adopted a broad rule disallowing NIED claims that result from alleged medical negligence. For example in ***Finnegan ex rel. Skoglind v. Wisconsin Patients Compensation Fund***, 2003 WI 98, 263 Wis. 2d 574, 585, 666 N.W.2d 797, 803 (Wis. 2003), the Wisconsin Supreme Court ruled that NIED claims "premised on medical malpractice" were not recognized by the state's medical malpractice statute. ***Id.*** ¶ 19.[10] In reaching this result, the Wisconsin Supreme Court noted that the purpose of the medical malpractice statute was "to limit, not expand" liability for medical malpractice. ***Id.*** ¶ 21;[11] *see also* ***Edinburg Hosp. Auth. v. Trevino***, 941 S.W.2d 76 (Tex. 1997) (declining, based on "policy concerns" to allow NIED claims based upon medical negligence because "[a] bystander may not be able to distinguish between medical treatment that helps the patient and conduct that is harmful").

As an initial matter, we note that the courts' authority to determine Tennessee public policy is narrow. The Tennessee Supreme Court described its own role as follows:

> The law in Tennessee restricts this Court's role in declaring public policy. The Court is not free to establish what its members believe to be the best policy for the State; rather, we must determine where public policy is to be found, what the specific public policy is, and how it is applicable to the case at hand. Ordinarily, the Court is not the institution that is called upon to divine the nature of public policy in its most general terms; this Court usually decides whether or not any controlling public policy has been established or declared and then determines how it applies to a particular case.

---

[10] The argument set forth by the defendants in ***Finnegan***, that the state's medical malpractice statute eliminated an NIED claim based on medical negligence, has not been raised in this appeal. Accordingly, we will not address what effect, if any, Tennessee's healthcare liability statute has on this case.

[11] Vanderbilt relies heavily on the concurrence in ***Finnegan***. The concurrence disagreed with the majority's analysis of the state's medical malpractice statute but nonetheless would have held that the plaintiff did not make out an NIED claim because "the failure to make the proper medical diagnosis is not an event that itself is perceived by a family member." ***Id.*** at ¶ 55. As previously discussed, however, this case does not involve a misdiagnosis, but the failure to treat, an act which was witnessed by Appellants and perceived by them to be injuring their daughter.

***Smith v. Gore***, 728 S.W.2d 738, 746 (Tenn. 1987). Rather, "[t]he public policy of Tennessee 'is to be found in its constitution, statutes, judicial decisions and applicable rules of common law.'" ***Id.*** at 747 (quoting ***State ex rel. Swann v. Pack***, 527 S.W.2d 99, 112 n.17 (Tenn.1975), *cert. denied*, 424 U.S. 954, 96 S. Ct. 1429, 47 L. Ed. 2d 360 (1976)). Despite settled law that our recognition of public policy must result from current Tennessee authorities, other than the NIED caselaw thoroughly discussed *supra*, Vanderbilt cites only a single Tennessee case in support of its argument that Tennessee public policy conflicts with the NIED claim in this case, ***Thurmon v. Sellers***, 62 S.W.3d 145 (Tenn. Ct. App. 2001). In ***Thurmon***, the plaintiff mother sued the defendant driver for wrongful death related to the death of her son in an automobile accident. Among her claims, the plaintiff mother alleged that she suffered damages from loss of consortium as well as for her emotional injuries. ***Id.*** at 150. The trial court granted a directed verdict on the mother's loss of consortium claim. ***Id.*** at 151. The Court of Appeals disagreed, holding that the mother could maintain an action for loss of consortium as part of her wrongful death claim. ***Id.*** at 160–61. The Court noted, however, that the damages awarded for loss of consortium was limited to pecuniary loss and therefore did not include damages "for the sorrow and anguish endured as a result of the child's death." ***Id.*** at 161 (citing ***Wycko v. Gnodtke***, 361 Mich. 331, 105 N.W.2d 118, 123 (1960)).

Respectfully, ***Thurmon*** is inapposite to the case-at-bar. First, we note that the claim by the mother in ***Thurmon*** was not an NIED claim.[12] The mother in ***Thurmon*** undisputedly did not witness the fatal accident or arrive at the scene shortly thereafter; instead, the mother's claim involved only wrongful death. ***Id.*** at 149–50. As such, the limitation of damages for "sorrow and anguish" is applicable only in the context of a loss of consortium claim. Such a limitation has never been applied in the context of an NIED claim. Indeed, Vanderbilt cites no law, nor has our research revealed any, in which the damages for an NIED claim were limited to pecuniary value. Such a limitation directly conflicts with the purpose of NIED to compensate plaintiffs for emotional, rather than financial, injuries suffered as the foreseeable result of the defendant's negligence. *See* ***Ramsey***, 931 S.W.2d at 531. Accordingly, we find no public policy expressed in ***Thurmon*** that supports Vanderbilt's argument in this case.

Although not argued by Vanderbilt, we agree that Tennessee law reflects a public policy to place limits on claims sounding in medical negligence. Pursuant to the Tennessee Health Care Liability Act, the Tennessee General Assembly has enacted procedural and substantive requirements on health care liability actions involving claims of medical negligence. *See* ***Williams v. SMZ Specialists, P.C.***, No. W2012-00740-COA-R9-CV, 2013 WL 1701843, at *8 (Tenn. Ct. App. Apr. 19, 2013). The purpose of the statute was, in part, "'to reduce the number of frivolous lawsuits filed in Tennessee each

---

[12] Another participant in the accident did file an NIED claim. ***Thurmon***, 62 S.W.3d at 161. The trial court refused to dismiss this claim, which decision was affirmed by the Court of Appeals. ***Id.*** at 163–164.

- 26 -

year . . . by requiring early evaluation and streamlined disclosure of medical records.'" *Id.* (quoting ***DePue v. Schroeder***, No. E2010-00504-COA-R9-CV, 2011 WL 538865, at \*6 (Tenn. Ct. App. Feb. 15, 2011)). Similarly, the Tennessee Supreme Court has recognized the danger of meritless NIED claims and has adopted explicit rules to address that danger without sacrificing meritorious claims. *See* ***Camper***, 915 S.W.2d at 442. Specifically, the Court recognized that the possibility of trivial or fraudulent lawsuits is reduced by the requirement that the plaintiff show a serious or severe emotional injury. *Id.* at 443 ("[C]oncerns about possible frivolous or fraudulent lawsuits are dealt with by strengthening the 'injury' or 'loss' element of the basic negligence framework."). The Tennessee Supreme Court has likewise required that the plaintiff show that his or her emotional injuries were the foreseeable result of the defendant's negligence, and, in the case of standalone claims, that the plaintiff supports his or her injury claim with expert medical or scientific proof. ***Ramsey***, 931 S.W.2d at 531; ***Camper***, 915 S.W.2d at 446. The Tennessee Supreme Court has never, however, held that eliminating an entire class of negligence as constituting an injury-producing event was necessary to separate meritorious from meritless claims.

Vanderbilt's suggestion that this Court adopt a broad rule prohibiting all bystander NIED claims based upon medical negligence therefore conflicts with the Tennessee Supreme Court's stated desire to eliminate arbitrary rules barring otherwise meritorious claims. *See* ***Camper***, 915 S.W.2d at 442. Accordingly, adopting such a broad rule, either based on California law or public policy considerations, would conflict with the ***Camper*** court's express desire to balance the recognition that emotional injuries can occur in a variety of situations with the need to dispose of "trivial or fraudulent claims" by considering each case on its individual merits and the factors previously set forth by our courts. *See id.* at 440. In line with this more relaxed standard for NIED claims in Tennessee, were this Court to adopt the rule advanced by Vanderbilt, it would be imposing additional restrictions on NIED claims, contrary to the clear trend to expand the circumstances under which plaintiffs may recover for NIED. *See* ***Eskin***, 262 S.W.3d at 735 (noting that Tennessee NIED jurisprudence has been marked by "a thirty-year period in which this Court has steadily and consistently expanded the ability of bystanders to recover damages for the negligent infliction of emotional distress"). As such, important considerations militate against adopting the broad rule championed by Vanderbilt.

Finally, we note that adopting a blanket rule disallowing NIED claims involving medical negligence, as Vanderbilt suggests, conflicts with prior Tennessee caselaw wherein medical negligence served as the predicate tort for NIED claims. *See* ***Bain***, 936 S.W.2d at 623–24 (noting that to defend against the plaintiff's claims, the defendant medical providers submitted evidence that the hospital did not violate "the applicable medical standard of care" or "applicable health care standards," the standards that are applicable in cases of medical malpractice or negligence);[13] *see also* ***Estate of Amos***, 62

---

[13] We concede that ***Bain*** is a non-bystander case. ***Bain***, 936 S.W.2d at 623–24. Other non-

S.W.3d at 135 (although not involving medical malpractice, the negligence in *Estate of Amos* occurred in a health care setting). A Tennessee Court of Appeals case illustrates this point. In *Rothstein v. Orange Grove Center, Inc.*, No. E1999-00900-COA-R3-CV, 2000 WL 682648 (Tenn. Ct. App. May 25, 2000), *aff'd in part, rev'd in part*, 60 S.W.3d 807 (Tenn. 2001), the plaintiffs brought an NIED action against a group home and physician based on emotional injuries suffered after their adult daughter's death at a group home. *Id.* at *1 According to the parents' complaint, the daughter complained of headaches to the group house manager and was administered an over-the-counter pain medication. The house manager later consulted nurses about the daughter's fever and ongoing headaches and was told to administer ibuprofen. *Id.* On the Sunday before her death, the parents called the group home inquiring about their daughter. *Id.* On Tuesday, the daughter was seen by a physician, who ordered testing. That evening, mother called the group home to inform them of her daughter's breathing problem, which consisted of "a honking sound which would cease when people walked away." *Id.* The house manager informed mother that daughter would be taken to the hospital if the noise persisted. The next morning, however, the daughter was found in her room not breathing and ultimately died of bacterial meningitis. *Id.* The parents' complaint alleged causes of action for wrongful death, loss of consortium, and NIED. The trial court eventually granted the defendants' motion for judgment on the pleadings with regard to the NIED claim.

The Court of Appeals affirmed the trial court's decision in favor of defendants, noting that the parents were not placed in distress by the defendants' care of their daughter. *Id.* at *3. Instead, the evidence showed that parents were "reassured" that their daughter was being treated and would soon recover. *Id.* Where the plaintiff parents did not witness or in any way perceive any medical care that could constitute an injury-producing event, the Court concluded that their claim failed. *Id.* Moreover, because the parents did not allege that they were in any way distressed over the medical care being provided to their daughter, it appears that the plaintiffs could not show that it was the defendants' negligence, rather than merely their daughter's death, that caused their emotional injuries. *Id.* Although the Tennessee Supreme Court later granted permission to appeal a number of issues in *Rothstein*, the Tennessee Court of Appeals' holding with regard to parents' NIED claims was left undisturbed. *See generally Rothstein v. Orange Grove Ctr., Inc.*, 60 S.W.3d 807 (Tenn. 2001).

---

bystander cases have likewise considered NIED claims based upon allegedly negligent medical care. *See Coleman v. Wilwayco*, No. M2005-00075-COA-R3-CV, 2006 WL 140390, at *7 (Tenn. Ct. App. Jan. 17, 2006) (involving an NIED claim predicated on the defendant medical provider's misdiagnosis of the plaintiff; affirming dismissal of the claim based upon the plaintiff's failure to timely submit expert medical or scientific proof of a severe emotional injury); *Durbin*, 2001 WL 1013071, at *10. Again, we note that Tennessee courts have never expressly held that the negligence needed to sustain a bystander NIED claim is narrower than the negligence needed to sustain a direct claim of NIED.

The ***Rothstein*** case is important because it is one of the few cases considered by Tennessee courts to address a bystander NIED claim predicated on medical negligence. The Court of Appeals' decision, however, is not based on any rule disallowing NIED claims where the predicate tort involves medical negligence. Rather, the Court focuses on the fact that the parents did not witness or perceive the acts of medical negligence alleged. Had the parents witnessed the alleged negligence, a claim for NIED may have been appropriate; in the absence of such perception, however, the parents' claim failed. In ***Rothstein***, however, the only involvement that parents had with the defendants was learning of past and future treatment through phone calls. As such, there was no contemporaneous awareness of the daughter's injuries or their cause.

The situation in this case is markedly different. Not only did Appellants witness the deterioration and suffering of their daughter, they also witnessed Vanderbilt staff's repeated promises to provide additional care to their child, which never occurred until the child's acute injury. During this period of hours, Mr. Henderson testified that he became more distressed and angry at Vanderbilt's failure to provide the promised care. According to Appellants' experts, the failure of Vanderbilt to provide timely treatment resulted in the child's unfortunate death. In addition, Appellants' psychiatric expert testified that Appellants' severe emotional injuries were the result of the events leading up to the child's injuries, i.e., the period of time in which Appellants witnessed Vanderbilt's failure to provide promised care for their daughter. Clearly then, unlike the mother in ***Rothstein***, Appellants witnessed the alleged negligence that purportedly resulted in the death of their daughter.

Another case bears mentioning. In ***Estate of Bradley v. Hamilton Cty.,*** No. E2014-02215-COA-R3-CV, 2015 WL 9946266, at *7 (Tenn. Ct. App. Aug. 21, 2015), the sister of a jail inmate brought a bystander NIED claim related to the death of her brother because of inadequate medical care provided to him in the county jail over a period of months. The trial court dismissed the claim because the sister had not complied with the pre-suit notice requirements applicable in health care liability actions. ***Id.*** (citing Tenn. Code Ann. § 29-26-101, *et seq.*). The Court of Appeals affirmed the dismissal based upon the pre-suit notice requirements. ***Bradley***, 2015 WL 9946266, at *7. In holding that the health care liability notice requirements were applicable to the sister's NIED claim, this Court impliedly recognized the viability of NIED claims predicated on medical negligence.[14]

Based on the foregoing, we respectfully decline Vanderbilt's invitation to adopt a broad rule in Tennessee disallowing all NIED claims based upon medical negligence. We also reject the dissent's sudden occurrence rule. Here, Appellant's perception of Vanderbilt's alleged failure to provide promised care over a period of hours constitutes

---

[14] Here, there is no allegation that Appellants failed to comply with the notice requirements applicable to claims involving health care liability.

an injury-producing event for purposes of Appellants' NIED claim. Like in ***Ochoa***, ***Keys***, and ***Gendek***, the injury-producing event alleged is not a misdiagnosis invisible to the lay person, but the complete failure of Vanderbilt to provide care as promised over a period of hours, while Appellants helplessly watched their daughter suffer, all the while growing more and more anxious over the lack of care provided to her. *See **Keys***, 185 Cal. Rptr. 3d at 318; ***Gendek***, 654 A.2d at 975; ***Ochoa***, 703 P.2d at 7. In addition, the child's injury did not materialize days or months later, but within hours of Vanderbilt's alleged ongoing failure to provide care, while the child was still under Vanderbilt's care. *See **Gendek***, 654 A.2d at 975; *see also **Ochoa***, 703 P.2d at 7 (allowing a claim even though the child's injury occurred hours after mother witnessed the defendant's negligence). Under these circumstances, we conclude that, even if the plaintiff is required to show that he or she could contemplate not only the injury to the victim, but also the connection between the victim's injury and the defendant's negligence, *see **Bird***, 51 P.3d at 331, such requirement has been met based upon the particular facts of this case.[15] Accordingly, the trial court erred in granting Vanderbilt's motion for partial summary judgment on the basis that Appellants had not shown contemporaneous awareness of an injury-producing event.

The judgment of the Circuit Court of Davidson County is therefore reversed, and this cause is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee, The Vanderbilt University, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[15] Because of the facts of this case, we need not determine whether such a rule is required under Tennessee law, nor do we express any Opinion as to the viability of NIED claims based upon medical misdiagnoses.