Filed 2/23/15  Certified for publication 3/25/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PHYLLIS KEYS et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>      Defendant and Appellant. | A140038<br><br>(Alameda County<br>Super. Ct. No. RG09478812) |

Defendant Alta Bates Summit Medical Center (Alta Bates) appeals from the portion of a judgment awarding plaintiffs Phyllis Keys and Erma Smith damages on their claims for negligent infliction of emotional distress (NIED). Defendant contends there is no evidence to support the jury's finding that plaintiffs meaningfully comprehended the medical negligence that led to the death of their family member at the time the negligence was occurring.  We disagree and affirm the judgment with respect to the emotional distress claims.

**Factual History**

Madeline Knox was the mother of plaintiff Phyllis Keys and the sister of plaintiff Erma Smith.  On September 26, 2008, Keys and Smith accompanied Knox to Alta Bates where she underwent surgery on her thyroid. At approximately 6:45 p.m., Knox was transferred from a post-anesthesia care unit to a medical-surgical unit.  At that time, a nurse noticed Knox's breathing was "noisy," and thought it was stridor, a sound that comes from the upper airway suggesting the airway is obstructed.  Because of Knox's

1

respiratory difficulty, at 6:46 p.m., the nurse called the hospital's rapid assessment team to evaluate her. The rapid assessment team is composed of a respiratory therapist and a nurse from the intensive care unit (ICU). Notes taken by the ICU nurse indicated the rapid assessment team arrived at Knox's bedside at 6:48 p.m., and left her room at 6:57 p.m. While there, the respiratory therapist suctioned Knox's mouth, removing some secretions. Dr. Richard Kerbavaz, the surgeon who operated on Knox, was called at 6:50 p.m. and advised about Knox's breathing. Dr. Kerbavaz arrived sometime shortly after 7:00 p.m. At Knox's bedside, Dr. Kerbavaz tried to reposition her and suctioned her mouth and nose. As he removed the bandages and began removing the sutures on her incision to relieve pressure, Knox stopped breathing. Dr. Kerbavaz called a code blue at 7:23 p.m.[1] Knox was without a pulse for a number of minutes and as a result of her blocked airway, she suffered a permanent brain injury. Knox was transferred to the ICU. She died on October 5, 2008, after life support was withdrawn.

Keys saw her mother immediately after surgery while she was on a gurney waiting to be brought to her room. Keys testified that Knox "didn't look herself" and her skin appeared gray. Knox appeared to be very uncomfortable and in distress, and she was sweating. She could not speak and was making a gurgling sound when she breathed. Once they were in her room, the respiratory therapist suctioned Knox twice. Knox had nodded when asked if the suctioning made her feel better, but she still appeared to be uncomfortable. Keys asked the nurse to call Knox's doctor because her conditions was not improving. After Dr. Kerbavaz arrived, she watched him begin to examine the site of the surgery and then saw her mother's eyes roll back and her arm go up, and Dr. Kerbavaz call code blue. Smith immediately took Keys from the room. Keys was frustrated and upset because she felt there was no sense of urgency among the staff to determine why her mother was in distress; she thought that the nurses and others were not moving quickly enough.

---

[1]A code blue is called when a patient loses consciousness; it summons a team of doctors to deal with the emergency.

Smith too saw Knox near the nurse's station before she was moved into her room. Knox indicated to her that she had a breathing problem. Knox looked uncomfortable to Smith, and was panting, but she was alert and sitting up. Knox was perspiring and was clammy. The first suctioning performed by the respiratory therapist appeared to provide some relief; Smith asked Knox if she felt better and she nodded. The problem recurred and at Smith's request, the respiratory therapist suctioned Knox again. Smith asked that Dr. Kerbavaz be called. Her sister remained uncomfortable while they were awaiting Dr. Kerbavaz and was not breathing well. After Dr. Kerbavaz arrived, Smith saw him reach toward her sister's neck and her sister's arm go up, and then someone called code blue. Everybody was then moving, and she and Keys were pushed aside. When code blue was called, she left the room immediately but went back to get Keys, who had not moved. Smith believed somebody should have come to help her sister sooner than they did. The lack of a sense of urgency upset her.

## Procedural History

Plaintiffs Keys and Smith, along with Key's sister Starlette Settles, filed a complaint for damages against defendant alleging causes of action for wrongful death and negligent infliction of emotional distress. Prior to trial, plaintiffs settled their claims against Dr. Kerbavaz, and the settlement was found to be in good faith. After trial, the jury awarded Keys and Settles $1 million on their wrongful death claims[2] and awarded Keys $175,000 and Smith $200,000 on their NIED claims.

Defendant filed a timely notice of appeal.

---

[2]This sum was subsequently reduced before entry of judgment to $220,000 pursuant to Civil Code section 3333.2, subdivision (b), and to reflect a set-off for settlement monies received. Defendant does not challenge the award on plaintiffs' wrongful death claim.

## Discussion

### I.

Defendant argues that the verdicts in favor of plaintiffs Keys and Smith on their NIED claims must be reversed because they were unsupported by substantial evidence. We disagree.

Under the substantial evidence standard of review, "[w]e must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment. [Citations.] [¶] … If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) It is not our role to "reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." ( *People v. Cochran* (2002) 103 Cal.App.4th 8, 13.) That role is the "province of the trier of fact." ( *Howard v. Owens Corning, supra,* at p. 630.)

In *Thing v. La Chusa* (1989) 48 Cal.3d 644, 667–68 (*Thing*), the California Supreme Court established three requirements that a plaintiff must satisfy to recover on a claim for negligent infliction of emotional distress to a bystander: (1) the plaintiff must be closely related to the injury victim; (2) the plaintiff must have been present at the scene of the injury-producing event at the time it occurred and then aware that it was causing injury to the victim; and (3) as a result, the plaintiff must have suffered serious emotional distress. In this case, there is no dispute that Keys and Smith are closely related to Knox and that they were with Knox from the time she began exhibiting difficulty breathing until her doctor called the code blue. Defendant argues that there is no substantial evidence, however, that Keys and Smith were aware at that time that defendant's negligence was causing injury to Knox.

In making this argument, defendant relies upon *Bird v. Saenz* (2002) 28 Cal.4th 910 (*Bird*). In that case, two events were identified by the California Supreme Court as potential injury-producing events: (1) the negligent transection of the victim's artery; and (2) the subsequent negligence by the defendants in failing to diagnose and treat the

4

damaged artery. (*Id*. at p. 917.)  The court ruled that the plaintiffs could not recover for negligent infliction of emotional distress to a bystander for either event. With respect to the negligent transection, the plaintiffs were not present at, nor did they observe the injury-producing event.  (*Ibid*.)  As for the defendants' subsequent negligence in failing to diagnose and treat the victim's damaged artery, the plaintiffs did not, and could not, meaningfully perceive the defendants' negligence because "[e]xcept in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders." (*Ibid*.)  The court continued, "Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate. While they eventually became aware that one injury-producing event-the transected artery-had occurred, they had no basis for believing that another, subtler event was occurring in its wake." (*Ibid*.)

Plaintiffs also cite *Bird* in support of their position, but rely primarily upon *Ochoa v. Superior Court* (1985) 39 Cal.3d 159 (*Ochoa*), a case that the Supreme Court discussed extensively in *Bird*. "In [*Ochoa*], a boy confined in a juvenile detention facility died of pneumonia after authorities ignored his obviously serious symptoms, which included vomiting, coughing up blood, and excruciating pain. We permitted the mother, who observed the neglect and recognized it as harming her son, to sue as a bystander for NIED. Anticipating the formula we would later adopt in *Thing*, we explained that 'when there is observation of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof is causing harm to the child, recovery is permitted.' [Citation.] The injury-producing event was the failure of custodial authorities to respond significantly to symptoms obviously requiring immediate medical attention.  Such a failure to provide medical assistance, as opposed to a misdiagnosis, unsuccessful treatment, or treatment that turns out to have been inappropriate only in retrospect, is not necessarily hidden from the understanding awareness of a layperson." (*Bird, supra,* 28 Cal.4th at pp. 919–920; see *Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318 [relative who watched a paramedic conduct a cursory medical examination that failed to detect signs of sickle cell shock was permitted

5

to sue for wrongful death but not for NIED because there was no evidence "he was then aware [that the decedent] was being injured by [the paramedic's] negligent conduct"].)

Accordingly, *Bird* does not categorically bar plaintiffs who witness acts of medical negligence from pursuing NIED claims. "This is not to say that a layperson can never perceive medical negligence or that one who does perceive it cannot assert a valid claim for NIED." (*Bird, supra*, 28 Cal.4th at p. 918.) Particularly, a NIED claim may arise when as in Ochoa caregivers fail "to respond significantly to symptoms obviously requiring immediate medical attention." (*Bird, supra*, 28 Cal.4th at p. 920.)

The evidence here showed that the plaintiffs were present when Knox, their mother and sister, had difficulty breathing following thyroid surgery. They observed inadequate efforts to assist her breathing, and called for help from the respiratory therapist, directing him at one point to suction her throat. They also directed hospital staff to call for the surgeon to return to Knox's bedside to treat her breathing problems. These facts could be properly considered by the jury to demonstrate that the plaintiffs were contemporaneously aware of Knox's injury and the inadequate treatment provided her by defendants.

Defendants say recovery here is not possible because under *Bird* it was incumbent upon plaintiffs to prove that Knox's inability to breathe was due to the hematoma in her throat. We disagree. There is no evidence that the hematoma was due to an act of medical negligence. The only evidence in the record is that the stridor presented by Knox is a well-known, post-operative complication of thyroid surgery. No evidence suggests that the hematoma resulted from substandard care. Rather, a hematoma was described by defendant's expert as a common risk of thyroid surgery that can occur without negligence. It would be erroneous for us to characterize a common surgical complication that may occur without any breach of the duty of care to be an injury producing event for a medical malpractice or NIED claim. (See, *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 ["The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate

6

causal connection between the negligent conduct and the injury; and (4) resulting loss or damage."].)  Moreover, the plaintiffs' expert did not characterize the hematoma as critical in warranting an urgent response on the part of defendants.  Instead, he describes the critical factor as the failure of defendants to realize Knox had a compromised airway.  The negligence in this case was the failure of defendants to intubate the decedent or otherwise treat her compromised airway, not a failure to diagnose her post-surgical hematoma.  The injury producing event here was defendants lack of acuity and response to Knox's inability to breathe, a condition the plaintiffs observed and were aware was causing her injury.

The jury was instructed under CACI 1621 as it provided at the time of trial that in order to find defendants liable for NIED it had to find that the plaintiffs were present when the injury occurred and "aware that Madeline Knox was being injured."  The dissent considers it material in this case that CACI 1621 has been modified since the time of trial to include a specific paragraph elaborating on the causation requirement for a NIED claim.  We do not.  As the dissent points out, CACI 1621 provides the jury is to determine: "That [name of plaintiff] was then aware that the [e.g. traffic accident was causing [injury to/the death of] [name of victim]."  (CACI No. 1621 (2014) vol. 1, p. 984.)  Here, if the court had this version of the instruction available, the jury would be told it had to determine: "That Ms. Keys and Ms. Smith were then were aware that the inadequate treatment of Ms. Knox's compromised airway was causing her injury."  The evidence and the record in this case lead us to conclude that they were and that the jury made such a determination.

This case is more like *Ochoa* than *Bird.*  A reasonable inference can be drawn from the evidence that Keys and Smith were present and observed Knox's acute respiratory distress and were aware that defendants' inadequate response caused her death.  When " 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld."  (*Howard v. Owens Corning, supra*, 72 Cal.App.4th at p. 631.)

7

## II.

We have no reason to question the jury's conclusion that Keys and Smith suffered serious emotional distress as a result of watching Knox's struggle to breathe that led to her death. The jury was properly instructed, as explained in *Thing*, that "[s]erious emotional distress exists if an ordinary, reasonable person would be unable to cope with it." (*Thing, supra*, 48 Cal.3d at p. 668 n.12.) The instructions clarify that "Emotional distress includes suffering, anguish, fright, . . . nervousness, grief, anxiety, worry, shock . . . ." Viewed through this lens there is no question that Smith and Keys's testimony provides sufficient proof of serious emotional distress.

Smith said she was scared and upset following her sister's code blue episode in the recovery room. She prayed for her recovery, would not agree to the characterization that she was able to cope with the mental and emotional stress of the events in the recovery room, and "went to pieces" when she learned her sister had died.

Keys was more descriptive of her feeling in the recovery room while her mother struggled to breathe. She testified, "I felt wow, whew. I felt very helpless because there was nothing—I couldn't do anything but stand there wishing something could be done— could be done to her. Nothing was done. She looked very—her face was just gray. She was perspiring a lot. Helpless. Looked in pain and there's nothing I could do but just stand there. And I was just—devastation, devastated that everything that happened to her." When the code blue was called, Keys described her reaction as "very emotional and shocked," and she was crying.

8

**Disposition**

The judgment is affirmed.

 

_____

Siggins, J.

I concur:

_____

McGuiness, P.J.

POLLAK, J., Dissenting.

I do not question for a moment the emotional distress plaintiffs must have endured while observing their mother and sister struggle to breathe, and the unsuccessful efforts that were made to remedy her distress. I also acknowledge reservations about the logic and wisdom of the standard that has evolved from the decisions of our Supreme Court as to when a bystander may recover for experiencing such emotional distress. Nonetheless, being bound to follow those decisions, I cannot in good conscience agree that the evidence in this case supports the recovery of damages for the negligent infliction of emotional distress (NIED).

The negligence in this case was the misdiagnosis of the cause of Madeline Knox's compromised ability to breathe and resulting stridor, noisy breathing indicative of airway obstruction. This was not a situation as in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, where the authorities ignored obvious signs of distress and did nothing to treat the conditions for almost two days. Here, medical personnel responded immediately to Knox's stridor, promptly summoning the hospital's rapid assessment team and then the surgeon who had performed Knox's operation, twice suctioning secretions from Knox's mouth and nose, and removing bandages and sutures to relieve pressure. Plaintiffs observed that these steps were "inadequate"—as the majority opinion points out several times—but they observed only that they were inadequate in the sense that they did not correct the problem. Plaintiffs observed that Knox continued to have trouble breathing, but they could not observe and did not know that the surgeon and staff had not correctly diagnosed the cause of the stridor.

Plaintiffs' expert testified and the jury apparently found that the medical staff failed to recognize that Knox's breathing difficulties were being caused by a hematoma, requiring a higher level of care from an intensivist care physician or anesthesiologist. That, in the opinion of plaintiffs' expert, was the cause of Knox's injuries and eventual

1

death. Plaintiffs did not know that the treatment they were witnessing was inadequate because the medical staff had misdiagnosed the cause of Knox's breathing difficulty.

The line of bystander emotional distress cases from our Supreme Court, most recently summarized and restated in *Bird v. Saenz* (2002) 28 Cal.4th 910 (*Bird*), make clear that in order to permit recovery, it is not enough that plaintiff bystanders observe the injured person's suffering. The plaintiffs must " 'experience a contemporaneous sensory awareness of the causal connection between the negligent conduct and the resulting injury.' " (*Id*. at p. 918.)  There must be " '*contemporaneous awareness the defendant's conduct or lack thereof is causing harm*.' " (*Id*. at p. 919.)  While the court rejected the notion "that a layperson can never perceive medical negligence" (*id*. at p. 918), the court made clear that recovery is possible only in extreme cases (such as observation of the amputation of the wrong limb), "[b]ut the same cannot be assumed of medical malpractice generally" (*ibid*.). In *Bird*, the court makes clear that to permit recovery, the bystander plaintiff must observe not only the negligent act and the injury, but also must be aware of the causal connection between the two. There must be "contemporaneous, understanding and awareness of the event as causing harm to the victim."  (*Id*. at p. 920.)

The facts in *Bird* and in several cases cited with approval in *Bird* provide illustrations of this limitation, all strikingly similar to the facts in the present case. In *Bird*, two events were identified as potential injury-producing events: the negligent transection of the victim's artery and the subsequent negligence by the defendants in failing to diagnose and treat the damaged artery.  (*Bird*, *supra*, 28 Cal.4th at p. 917.)  The court ruled that the plaintiffs could not recover for negligent infliction of emotional distress based on the negligent transection because they did not observe that injury-producing event. As to the subsequent misdiagnosis and failure to properly treat the damaged artery, the plaintiffs could not recover because they did not, and could not, meaningfully perceive the defendants' negligence. The court stated, "Except in the most obvious cases, a misdiagnosis is beyond the awareness of lay bystanders." (*Ibid*.)  The

2

court continued, "Even if plaintiffs believed, as they stated in their declarations, that their mother was bleeding to death, they had no reason to know that the care she was receiving to diagnose and correct the cause of the problem was inadequate." (*Ibid*.)

The *Bird* opinion discusses approvingly several other cases in which NIED recovery was denied because of the bystanders' lack of awareness of a misdiagnosis, even though they were aware that treatment was failing to correct the patient's physical problem. I quote from the Supreme Court opinion: "In *Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318 . . . , a relative who watched a paramedic conduct a cursory medical examination that failed to detect signs of sickle cell shock was permitted to sue for wrongful death but not for NIED. While the relative was 'present at the scene at the time the injury-producing event occurred,' there was no evidence 'he was *then* aware [that the decedent] was being injured by [the paramedic's] negligent conduct.' (*Id*. at p. 350.) Likewise, in *Breazeal v. Henry Mayo Newhall Memorial Hospital* (1991) 234 Cal.App.3d 1329 . . . , a plaintiff who observed ultimately unsuccessful efforts to restore her son's breathing with a tracheostomy and endotracheal tubes was held not to have a valid claim for NIED. [Fn. omitted.] 'There was evidence that at some point [the plaintiff] saw [one of the defendant physicians] bent over [her son], with blood on both of them. However, there was no evidence . . . that what [the physician] was doing at that moment was 'an injury-producing event,' rather than an unsuccessful attempt to correct an already existing injury . . . .' (*Id*. at p. 1342.) Nor was she 'contemporaneously . . . aware that any such event was causing him injury.' (*Ibid*.) Finally, in *Meighan v. Shore* (1995) 34 Cal.App.4th 1025 . . . , the plaintiff wife, who was trained as a nurse, feared that her husband was experiencing a heart attack and believed that he was not being treated appropriately in the emergency room. In fact he was suffering a heart attack, but initial test results were to the contrary and physicians incorrectly misdiagnosed his condition. Citing *Golstein* [*v. Superior Court* (1990)] 223 Cal.App.3d 1415, 1427, the court concluded the plaintiff had no viable claim for NIED because 'understanding

3

perception of the injury-causing event is essential, and if it cannot be perceived, recovery cannot be allowed.' (*Meighan v. Shore*, *supra*, at p. 1046.)" (*Bird*, *supra*, 28 Cal.4th at pp. 918–919.)

Plaintiffs' lack of awareness that the cause of Knox's continued suffering was defendant's failure to correctly diagnose the cause of her stridor, under *Bird* and the cases it cites, thus precludes NIED recovery. The result is not changed by characterizing the injury producing event, as does the majority opinion, as "lack of acuity."

Moreover,  the jury in this case was not properly instructed. The instruction given was based on CACI No. 1621 as it read at the time of trial.  (CACI No. 1621 (2013) vol. 1, p. 862.)  Based on the then-current CACI instruction, the jury was instructed that the third element plaintiffs were required to prove to establish NIED was the following: "That Phyllis Keys and Erma Smith were present at the scene of the injury when it occurred and [were] aware that Madeline Knox was being injured."  Although taken from CACI, the instruction was incomplete and erroneous. Subsequent to the trial in this case, CACI No. 1621 has been modified to read as follows: "That [*name of plaintiff*] was then aware that the [*e.g., traffic accident*] was causing [injury to/the death of] [*name of victim*]." (CACI No. 1621 (2014) vol. 1, p. 878.)  As it appears, the corrected instruction adds the essential requirement that plaintiffs were contemporaneously aware that the defendant's negligence was causing the patient's injury. The omission of this critical factor from the court's instructions is, of course, understandable because based on the then-current CACI form instruction.  The jury's verdict is also understandable since it was based on that incomplete instruction.  Nonetheless, the omission of this critical factor was contrary to the clear holding of *Bird* and of the prior cases discussed in *Bird*.

The instruction that the majority states would have been given under the revised CACI instruction would not have corrected the error because it contains the same misunderstanding of what our Supreme Court has required. It is not sufficient that the bystanders realized the treatment being provided was "inadequate" to correct Knox's

4

breathing difficulty.  To recover for NIED they must have realized that Knox was not improving because defendant was not correctly diagnosing the cause of the breathing problem.  Plaintiffs must have been aware that defendant's negligence was the cause of the harm.

The revision that has since been made to the standard CACI instruction thus underscores why the judgment in this case cannot properly be affirmed.  Although plaintiffs were present and observed Knox's struggle to breathe, they were not then aware that the cause of Knox's continued suffering was defendant's failure to correctly diagnose the source of the airway obstruction, the hematoma at the surgical site.  The jury was not told it must find such awareness to find NIED, and the record contains no evidence upon which such a finding could have been made.

For these reasons, I respectfully dissent.


_____
Pollak, J.

5

Filed 3/25/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PHYLLIS KEYS et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER,<br><br>    Defendant and Appellant. | A140038<br><br>(Alameda County<br>Super. Ct. No. RG09478812)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

    The opinion filed in the above-entitled matter on February 23, 2015, was not certified for publication in the Official Reports. For good cause, the request for publication is granted.

    Pursuant to rule 8.1105(b) of the California Rules of Court, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.

DATE:                                          _____

                                                     McGuiness, P.J.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable John M. True, III |
| Counsel for Appellant: | Michael John Garvin<br>SHEUERMAN, MARTINI, TABARI<br>ZENERE & GARVIN<br><br>Alison M. Turner<br>GREINES, MARTIN, STEIN &<br>RICHLAND |
| Counsel for Respondents: | Markus Berlin Willoughby<br>WILLOUGHBY LAW FIRM<br><br>Monique Olivier<br>DUCKWORTH, PETERS, LEBOWITZ,<br>OLIVIER |