Filed 11/22/24  Dostie v. Marowitz CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CORY DOSTIE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDREW MAROWITZ,<br><br>        Defendant and Appellant. | A168780, A169164<br><br>(Alameda County<br>Super. Ct. No. RG20082410) |

Plaintiff Cory Dostie, a nonbinary transgender individual, sued their former landlord, defendant Andrew Marowitz, alleging he had failed to properly maintain the premises, discriminated against Dostie based on their gender identity and disability, and caused Dostie to suffer emotional distress. After a court trial, judgment was entered in favor of Dostie and against Marowitz for $60,000.  The court also awarded Dostie $22,750 in attorney fees.  Marowitz appeals the judgment and the fee award.  We affirm.

**BACKGROUND**

In November 2020, Dostie filed this action against Marowitz asserting causes of action, among others, for:  (1) constructive eviction; (2) negligence; (3) private nuisance; (4) breach of the covenant of good faith and fair dealing; (5) violation of Oakland's Tenant Protection Ordinance (TPO) (Oakland Mun. Code, § 8.22.600 et seq.); (6) violation of the Unruh Civil

Rights Act (Unruh Act) (Civ. Code, § 51); (7) discrimination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); and (8) intentional infliction of emotional distress (IIED).

Dostie alleged numerous housing defects related to an attic room they had rented from Marowitz from 2013 to 2018. Dostie also alleged that, as a nonbinary transgender individual with autism and moderate hearing loss, Marowitz discriminated against Dostie by refusing to properly gender them, mocking their gender identity, refusing to provide accommodations after a surgery, and asking them to move out. Dostie alleged that they had suffered severe emotional distress as a result of Marowitz's conduct. In May 2021, Marowitz filed a general denial to the complaint.

In December 2021, Marowitz moved for summary judgment. He alleged that his rental agreement with Dostie was illegal and unenforceable because the attic was an "illegal and unpermitted living space." Marowitz also argued that some of Dostie's causes of action were barred by the statute of limitations.

Dostie filed a declaration with their opposition, stating they did not know the attic room was unpermitted or illegal when they lived there. The trial court denied Marowitz's summary judgment motion for failure to establish the absence of triable issues of material fact with admissible evidence and rejected his argument regarding the statute of limitations.

In April 2022, Marowitz filed a motion for change of venue, arguing there was "too much government sponsored prejudice and resentment and dislike of landlords" for a fair and impartial trial in Alameda County. The trial court concluded that Marowitz had waived his right to seek transfer. (Code Civ. Proc., § 396b, subd. (a) [motion to transfer made at time of answer, demurrer, or motion to strike complaint].) Marowitz also filed a peremptory

challenge to the trial judge. The court denied it as untimely because the case had been assigned to the trial judge approximately 16 months prior. (*Id.,* § 170.6, subd. (a)(2) [motion must be within 15 days after notice of assignment in civil action].)

In August 2022, Marowitz filed a motion for leave to file a cross-complaint pursuant to Code of Civil Procedure section 426.50. The court denied the motion, finding "indications" that Marowitz lacked good faith because he had diligently defended himself against Dostie's claims but failed to explain why he waited so long to seek leave to amend, and the proposed cross-complaint included claims that were "legally questionable" and "not particularly compelling."

The matter was set for bench trial in May 2023. Marowitz filed an opposition to remote proceedings based on "his complete lack of technological proficiency." The trial commenced on May 8, 2023, with Dostie's counsel and Marowitz appearing in person, but Dostie appearing virtually based on their place of residence. Both Dostie and Marowitz testified, and exhibits were admitted into evidence. Dostie also called an expert witness to testify on transgender issues.

The trial court found in favor of Dostie on the eight causes of action listed above, awarding $5,000 in damages for the Unruh Act violation, $5,000 in damages for the FEHA violation, $30,000 in damages for emotional distress (as trebled by the TPO), and $20,000 in punitive damages. It found in favor of Marowitz on three other causes of action, including one for breach of the implied warranty of habitability.

Dostie filed a proposed statement of decision as directed. Marowitz filed objections. The trial court adopted the statement of decision, and

3

judgment was entered in favor of Dostie for $60,000.  Marowitz filed a motion for new trial, which was denied.

In July 2023, Dostie moved for prevailing party attorney fees under Code of Civil Procedure section 1032.  Marowitz opposed the motion, arguing that his rental agreement with Dostie precluded such fees.  The court granted the motion in part, determining that the requested amount was "grossly excessive" but awarding $22,750 as reasonable attorney fees.

Marowitz filed timely notices of appeal from both the judgment and the fee order.  The court consolidated the appeals on its own motion.

## DISCUSSION

Marowitz's appellate briefing is not a model of clarity and violates several basic briefing rules.  The opening brief begins with a list of 17 issues (plus additional subparts) presented in repetitive and jumbled fashion. Marowitz contends that each of these issues should be reviewed under three—de novo, substantial evidence, and abuse of discretion—standards of review.  The brief then includes various headings that do not entirely track the issues listed at the outset.  (Cal. Rules of Court, rule 8.204(a)(1)(B)[1] [briefs must state each point under a separate heading or subheading].)  This poses a formidable obstacle to understanding Marowitz's arguments, let alone persuading us that they have any merit.

Both the opening and reply briefs make numerous factual assertions without any citation to the record.  (Rule 8.204(a)(1)(C) [briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)  Most of Marowitz's arguments are not supported with any legal authority or analysis.

---

[1] All further citations to Rules are to the California Rules of Court.

4

(Rule 8.204(a)(1)(B) [briefs must "support each point by argument and, if possible, by citation of authority"]; see also *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 (*Hodjat*) ["[A]ppellant is required to not only cite to valid legal authority, but also explain how it applies in his case"].)

Appellate courts are not required to "comb through the record" for factual items or to consider alleged errors in the " 'absence of cogent legal argument or citation to authority,' " and may treat such unsupported contentions as waived. (*Hodjat*, *supra*, 211 Cal.App.4th at p. 10; *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).) Although Marowitz is not represented by counsel, "he must 'be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 628.)

Marowitz's appellate briefing also includes personal attacks on both the trial judge and counsel. Marowitz accuses the trial judge of bias and "embroilment" in the action based on his background and makes contentions that have no support in the record (e.g., that the judge did not "actually read the trial exhibits"). Marowitz also accuses Dostie's counsel of not only lying, but "coaching" Dostie during their testimony and "tampering" with trial evidence. These assertions are scurrilous and unwarranted. " '*Ad hominem* arguments, of course, constitute one of the most common errors in logic: Trying to win an argument by calling your opponent names . . . only shows the paucity of your own reasoning.' " (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 763, quoting *Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430.)

5

Beyond these violations of briefing rules and civility standards, Marowitz attempts to challenge two rulings that are not appealable. Marowitz argues that his peremptory challenge was unjustly denied, but such a denial "is not an appealable order and may be reviewed only by way of a petition for writ of mandate."[2] (*Daniel V. v. Superior Court* (2006) 139 Cal.App.4th 28, 39; Code Civ. Proc., § 170.3, subd. (d).) He also argues that the trial court erred in denying his motion for change of venue, but again such an order "is reviewable only by petition for writ of mandate." (*K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 496, fn. 6; Code Civ. Proc., § 400.)

Finally, Marowitz asks us to "bring clarity and particularity" to the Unruh Act and regulations promulgated by the Department of Fair Employment and Housing (DFEH). Specifically, Marowitz contends that the definition of "discriminatory effect" in DFEH regulations is unclear, and that the laws should "provide guidelines of Free Speech, especially of mutually engaged verbal conversations of protected category topics (gender identity)" and include "parallel" protections for landlords and tenants. But Marowitz does not explain how these arguments are properly within the scope of the underlying action or this appeal. (Eisenberg, Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:1 ["Appellate courts are guided—and restricted—by a large, well-developed body of rules prescribing the scope and limits of appellate review. . . . The appellate court's ultimate

---

[2] Given this conclusion, we need not and do not address Marowitz's argument that the peremptory challenge should have been granted because he was not served with the case assignment. And we reject Marowitz's argument that the trial court should have dismissed the action for failure to serve the summons and complaint. (See Code Civ. Proc., § 410.50, subd. (a) [general appearance by party is equivalent to personal service of summons].)

goal is twofold: to *correct 'prejudicial' trial court error*, and to ensure *statewide uniform application* of the law"].) We see no basis to answer them here, but address Marowitz's remaining arguments below.

## I.

### *Motion for Summary Judgment*

Marowitz argues that the trial court erred in denying his motion for summary judgment. "Summary judgment is governed by well-established standards. ' "Summary judgment is properly granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)" ' " (*Alameda Health System v. Alameda County Employees' Retirement Assn.* (2024) 100 Cal.App.5th 1159, 1173.) " ' "The purpose of a summary judgment proceeding is to permit a party to show that material factual claims arising from the pleadings need not be tried because they are not in dispute." ' " (*Id.* at p. 1174.) Our review is de novo. (*Ibid.*)

Marowitz contends that the trial court erred on summary judgment because, while Dostie submitted a declaration in opposition to the motion stating they did not know the room was illegal, Dostie later "admitted" such knowledge. As a preliminary matter, this contention is not persuasive because we must "take the facts from the record before the trial court when it ruled on that [summary judgment] motion." (*State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1034–1035.) Nor does Marowitz explain how it would support summary judgment on Dostie's *non-contract* causes of action. In any event, Marowitz mischaracterizes the record: in an opposition brief to a subsequent motion, Dostie references their position *during this litigation* that the rental agreement was "unenforceable." That is

7

not an admission that Dostie knew the contract (or attic room) was illegal at the time they were living there.

Marowitz also argues that the court should have granted summary judgment on "several" causes of action based on the statute of limitations but makes only one specific assertion: that the Unruh Act cause of action was not tenable because its one-year statute of limitations had expired. In *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, however, we explained that the statute of limitations applicable to an Unruh Act claim depends on whether the cause of action at issue "evolved from the common law" or not. (*Gatto*, at p. 759.) Where a statute creates new liability that did not exist under common law, the applicable statute of limitations is three years. (*Ibid.*; Code Civ. Proc., § 338, subd. (a).) In opposition to summary judgment and on appeal, Dostie maintains that this action "stems from a liability of a landlord to his tenant created by statute." (See also *Burks v. Poppy Const. Co.* (1962) 57 Cal. 2d 463, 470 [explaining Unruh Act was "designed to discourage discrimination" and could not be construed to exclude "all discriminatory practices with respect to housing"]; *Abstract Inv. Co. v. Hutchinson* (1962) 204 Cal.App.2d 242, 253 [rejecting argument that Unruh Act liability has "no application to the renting of property"]; Gov. Code, § 12955, subd. (d) [violation of Unruh Act as it "applies to housing accommodations" is also a violation of FEHA].) Marowitz offers no argument or authority to the contrary. (*Cahill, supra,* 194 Cal.App.4th at p. 956 [unsupported contentions may be treated as waived].) And given Dostie's allegations of conduct in violation of the Unruh Act through 2018, the filing of the complaint in 2020 commenced this action within the three-year statute of limitations.

In sum, we conclude that the trial court did not err in denying Marowitz's motion for summary judgment.

8

## II.

### *Motion for Leave to File Cross-Complaint*

Marowitz argues that the trial court applied the wrong legal standard in denying his motion for leave to file a cross-complaint. Code of Civil Procedure section 426.50 provides that a party who fails to plead a cause of action through "oversight, inadvertence, mistake, neglect, or other cause" may apply for leave to file a cross-complaint, and the court shall grant leave "upon such terms as may be just to the parties" and "if the party who failed to plead the cause acted in good faith." Code of Civil Procedure section 426.50 also requires it "be liberally construed to avoid forfeiture of causes of action." While we normally review a denial of such leave for abuse of discretion, our review is de novo here because Marowitz presents a question of law: whether the trial court selected the wrong legal standard in determining whether to grant leave. (*Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 558; *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

Marowitz contends that the trial court used the wrong legal standard here because it was required to find "a strong showing of 'bad faith,' " not simply a "lack of good faith." *Silver Organizations Ltd. v. Frank* (1990) 217 Cal.App.3d 94 (*Silver*) is instructive on the point. In that case, we explained that the "good faith" provision of Code of Civil Procedure section 426.50 affords a trial court with " 'some *modicum of discretion*' " in deciding whether to grant leave. (*Silver*, at p. 99.) What constitutes "good faith" under this provision, however, must also be determined in light of the legislative mandate that it be liberally construed. (*Id.* at p. 98.) Accordingly, leave to file a cross-complaint must be granted where forfeiture would otherwise result unless bad faith—which "obviously negate[s]" good faith—is demonstrated. (*Id.* at p. 100.) But findings that the moving party lacked

9

good faith may be affirmed if there is substantial evidence of bad faith by the moving party. (*Id*. at p. 99.)

We see no basis to conclude that the trial court ran afoul of the legal standard articulated in Code of Civil Procedure section 426.50 and *Silver*. Despite filing a general denial to the complaint in May 2021, Marowitz waited 15 months before requesting leave to file a cross-complaint. Marowitz offered no explanation for this delay. In the interim, he had filed a summary judgment motion, peremptory challenge, and motion for change of venue. Moreover, despite asserting for the prior 15 months that the rental agreement with Dostie was illegal and unenforceable, all three causes of action in Marowitz's proposed cross-complaint were for breach of contract. And the trial court correctly noted that these claims were "legally questionable." For example, Marowitz alleged that Dostie had violated their contract by "impos[ing] their gender/gender identity" on others and sought damages for "rental losses." The trial court found Marowitz lacked good faith, citing conduct that we conclude was sufficient to demonstrate bad faith. (See, e.g., *Gherman v. Colburn*, *supra*, 72 Cal.App.3d at p. 559 [unexplained delay with long history of litigation between the parties and abrupt, strategic change of position would not constitute "good faith" under Code Civ. Proc., § 426.50].)

The trial court did not err in denying Marowitz's motion for leave to file a cross-complaint.

## III.

### *Findings After Trial*

Marowitz challenges the court's findings after trial in two respects. First, he argues there was insufficient evidence to support the findings on the

10

TPO and IIED causes of action, which led to the improper award of treble and punitive damages. Second, Marowitz claims that the trial court should not have found that he violated the Unruh Act and TPO because those laws did not apply here. We address each argument in turn.

## A. Sufficiency of Evidence

A losing defendant challenging the sufficiency of evidence is required " 'to demonstrate that there is *no* substantial evidence to support the challenged findings.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) "This traditional standard of review is highly deferential. It has three pillars. First, we accept all evidence supporting the trial court's order. Second, we completely disregard contrary evidence. Third, we draw all reasonable inferences to affirm the trial court. These three pillars support the lintel: we do not reweigh the evidence." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581 (*Schmidt*).) " 'If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.' " (*Keys v. Alta Bates Summit Medical Center* (2015) 235 Cal.App.4th 484, 488 (*Keys*).)

Marowitz argues there was insufficient evidence to support the trial court's finding that he violated section 8.22.640 of the TPO, which requires that owner misconduct be done "in bad faith." To support this position, however, Marowitz relies on favorable evidence regarding his attempted repairs to defects that arose during Dostie's tenancy. But a recitation of only the defendant's evidence "is not the 'demonstration' contemplated under the above [substantial evidence] rule." (*Foreman & Clark Corp. v Fallon, supra*, 3 Cal.3d at p. 881.) Marowitz is instead " 'required to set forth in [his] brief *all* the material evidence on the point and *not merely [his] own evidence.* Unless this is done the error is deemed to be waived.' " (*Ibid*.)

11

Marowitz also focuses on the *documentary* evidence, claiming there are "few, if any," emails "complaining of continuing dilapidations/negligence." But Dostie presented emails showing Marowitz refused to hire professionals to make repairs, which prolonged the existence of certain defects and led to continuing problems and admitted to being "aggressive and offensive." Another email from Marowitz demonstrated his refusal to use non-binary pronouns and his description of them as "silliness."

Apart from this documentary evidence, the statement of decision refers to Dostie's testimony that their interactions with Marowitz caused them to suffer, and to expert testimony that misgendering "can cause great stress to transgender individuals, leading to incidents of suicide or suicidal thoughts." We have no means to review this evidence: Marowitz elected to proceed in this appeal without a record of the oral proceedings below and represents there was no court reporter at trial. Accordingly, we deem his argument waived. (*Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 (*Pringle*) [failure to provide sufficient records, including reporter's transcript or other pertinent items, results in waiver].) Even if not waived, the record before us contains ample evidence that Marowitz acted in bad faith to support a finding that he violated section 8.22.640 of the TPO.

Marowitz argues next that there was no trial testimony or documentary evidence that he acted "in knowing violation of or in reckless disregard" of the ordinance, an element required to award treble damages under section 8.22.670, subdivision (B)(1)(a) of the TPO. The argument is again deemed waived, as we have no ability to review the trial testimony. (*Pringle, supra*, 73 Cal.App.4th at p. 1003.) Even if not waived, we are not persuaded by Marowitz's characterization of the documentary evidence: in an email to Dostie from January 2017, for example, Marowitz stated that if

12

he was unsuccessful in exterminating the bedbugs in the unit, Dostie could "sue, and/or to move as uninhabitable." This evidence supports the trial court's implied finding that Marowitz knew or acted in reckless disregard of his obligations under the TPO.

Marowitz also argues that there was insufficient evidence to support the trial court's finding on the IIED claim, which required Dostie to have suffered "severe or extreme emotional distress." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.) Again, without a sufficient record to permit appellate review, particularly given the trial court's explicit reliance on testimony to support its findings on emotional distress, the argument is deemed waived. (*Pringle*, *supra*, 73 Cal.App.4th at p. 1003.) Even if not waived, we are not persuaded by Marowitz's repeated citation to an April 2017 email from Dostie stating that Marowitz's misgendering "bugs me a little." Assuming the email on its own might support Marowitz's argument that Dostie's emotional distress was not "severe or extreme," the absence of a reporter's transcript prevents us from determining whether there was other evidence demonstrating that Dostie's emotional distress was severe. (See *Keys*, *supra*, 235 Cal.App.4th at p. 488.) This is especially so because Dostie alleged they suffered emotional distress based on *all* of Marowitz's conduct, including but not only his misgendering.

Nor are we persuaded by Marowitz's repeated accusations that Dostie's counsel "fabricated" or "tampered" with a January 2017 email from Dostie to Marowitz, stating that his conduct "absolutely reads as going out of your way to be intentionally aggravating and make me suffer." There is no evidence of any such tampering, nor are we persuaded that the context of this email (discussion of bedbugs) negates its relevance for the reason already

13

mentioned: Dostie claimed their emotional distress resulted from all of Marowitz's conduct, including his failure to remedy the housing defects.

Finally, Marowitz challenges the sufficiency of evidence supporting the trial court's findings on emotional distress by appearing to suggest that either Dostie had already been distressed because they had participated in "psychological counseling," or had already been compensated for their distress through a settlement obtained in different litigation related to a tenancy Dostie entered *after* they moved out of the room owned by Marowitz. Marowitz does not explain how any such evidence is relevant to Dostie's claim for emotional distress resulting from Marowitz's conduct during Dostie's tenancy in his unit, let alone why it bears on the substantiality of the evidence supporting the claim against Marowitz. (*Keys*, *supra*, 235 Cal.App.4th at p. 488 [If " ' "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld' "].)

In sum, we conclude there was sufficient evidence to support the trial court's findings on the Unruh Act, TPO and IIED causes of action.

## B. Violations of the Unruh Act and TPO

Marowitz argues that the trial court erred in finding that he violated the Unruh Act because any misgendering of Dostie was done before the Gender Recognition Act (Senate Bill No. 179 (2017–2018 Reg. Sess.)) was signed into law. The Gender Recognition Act was enacted in 2017 to "improve the procedures that allow transgender and nonbinary individuals to change their name and/or gender marker to conform with their gender identity in several identity documents including a birth certificate." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 179 (2017–2018 Reg. Sess.) as amended June 22, 2017, p. 2.) But the Unruh Act was enacted almost

14

60 years prior and provides in relevant part that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex . . . [or] disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b); Stats. 1959, ch. 1866, § 1, p. 4424.) Dostie alleged (and prevailed) on a cause of action for violation of the Unruh Act based on gender and disability discrimination.

Marowitz contends that any misgendering prior to enforcement of the Gender Recognition Act has been "overruled" by *Taking Offense v. State of California* (2021) 66 Cal.App.5th 696. But that case is not on point, as it involved a provision of the Lesbian, Gay, Bisexual, and Transgender Long-Term Care Facility Residents' Bill of Rights (Health & Saf. Code, § 1439.50 et seq.) that prohibited staff members from willful and repeated reference to a resident contrary to their preferred name or pronoun. (*Taking Offense*, at p. 702.) The appellate court concluded that the provision was a content-based restriction of the staff members' speech that did not withstand strict scrutiny. (*Id.* at pp. 712, 721.) *Taking Offense* did not even address, let alone invalidate, any provision of the Unruh Act.

Marowitz also argues that the trial court erred in finding that he violated the TPO because it "contains specific language that the TPO is not applicable to rental agreements and tenancies that were entered into before the existence of the TPO," and there is no language in the TPO that indicates it is retroactively applicable. To support this position, however, Marowitz cites to section 8.22.060 of the ordinance: a notice provision regarding residential rent adjustments that is not part of the TPO. Moreover, as explained above, Dostie did not assert any causes of action based on the 2013 rental agreement. Instead, Dostie alleged (and prevailed) on a cause of action

15

for violation of the TPO based on Marowitz's conduct during their tenancy, including conduct that occurred in 2015, 2016, 2017 and 2018. The TPO was enacted in 2014. (See Oakland Mun. Code, § 8.22.610.) Marowitz has not shown how this cause of action raises any issue regarding retroactivity.

## IV.

### *Claims of Judicial Bias*

Marowitz argues that he was the victim of "apparent and actual bias" by the trial judge in this action. "California's substantial state statutory system for dealing with alleged judicial bias . . . requires those concerned about judicial bias to file in the trial court and, if dissatisfied, to petition for writ of mandate, which is the exclusive means of review." (*Schmidt, supra,* 44 Cal.App.5th at p. 588; Code Civ. Proc., § 170.3, subd. (d).) As detailed above, Marowitz filed a peremptory challenge but did not petition for writ of mandate.

Even if he had done so, his claims fail on their merits. Marowitz contends that the trial court's denial of his various motions show bias. While we have rejected his arguments of error on these motions, we note that numerous or continuous rulings against one party (even when erroneous) do not themselves establish judicial bias. (*Schmidt, supra,* 44 Cal.App.5th at p. 589; *People v. Farley* (2009) 46 Cal.4th 1053, 1110.)

Marowitz also claims "embroilment" by the trial court, alleging that it "introduced" new causes of action on Dostie's behalf. This claim appears to be based on the trial court's finding that Marowitz had committed an "intentional tort." But this is not a new cause of action: Dostie alleged, and prevailed on, their cause of action for IIED. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 [IIED is an intentional tort].) Marowitz also

16

appears to take issue with the "PREMISES LIABILITY (NUISANCE)" heading in the statement of decision, but again Dostie alleged (and prevailed on) their cause of action for nuisance. Marowitz's argument regarding the claim for breach of implied warranty of habitability is less clear—he seems to allege the trial court was "applying" Health and Safety Code section 17920.3—but we see nothing that demonstrates bias, particularly as Marowitz prevailed on the implied warranty cause of action.

Finally, Marowitz argues that there were various "irregularities" in the trial proceedings showing judicial bias: Dostie's remote appearance,[3] limitations on Dostie's cross-examination, exclusion of testimony by Dostie's subsequent landlord, inclusion of expert testimony, direction to submit trial briefing, and adoption of Dostie's proposed statement of decision. Again, Marowitz does not provide citations to the record supporting these assertions and without any means to review the oral proceedings below, the arguments are deemed waived. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Even if not waived, Marowitz's arguments appear to attack evidentiary rulings and trial procedures within the court's discretion. (See Evid. Code, § 352 [court has discretion to exclude evidence if probative value is substantially outweighed by undue consumption of time or substantial danger of undue prejudice or confusion]; *id.,* § 720 [person with special knowledge, skill, experience, training, or education may be qualified to testify as expert on related subject]; Rule 3.1590(f) [preparation of proposed

_____

[3] We do not consider the purported new evidence contained in Marowitz's reply brief regarding Dostie's residence. (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1310 ["[A] party's brief cannot make arguments that rely on facts either outside the record or improperly included within it; statements in the briefs based on such matter are disregarded by an appellate court"].)

17

statement of decision]; Rule 3.672 [remote proceedings]; Rule 5.394 [trial briefs]; *California Crane School, Inc. v. National Com. for Certification of Crane Operators* (2014) 226 Cal.App.4th 12, 22–23 [trial court has "inherent authority and responsibility to fairly and efficiently administer the judicial proceedings before it," which includes enforcement of reasonable limits on presentation of evidence and examination of witnesses].) Marowitz is still, in effect, asserting his belief that the evidence favored him to such an extent that only bias can explain why he did not win. But unsupported assertions are not evidence of judicial bias. (*Schmidt, supra*, 44 Cal.App.5th at p. 589.)

In sum, Marowitz failed to provide an adequate record or sufficient factual or legal argument supporting his claims of judicial bias, and there is no basis for us to conclude such claims have any merit.

## V.

### *Attorney Fee Order*

Marowitz argues that the trial court erred in awarding Dostie $22,750 in attorney fees because of a provision in his rental agreement with Dostie that read: "If, in the event of any dispute, a legal action becomes necessary regarding this rental agreement or the parties to this agreement, each party shall bear the cost of their own legal representation in any and all matters related to said legal action."

Code of Civil Procedure section 1032, subdivision (b) provides that a prevailing party "is entitled as a matter of right to recover costs in any action or proceeding." Code of Civil Procedure section 1033.5, subdivision (a)(10) defines "costs" to include attorney fees authorized by contract, statute, or law. While we normally review an attorney fee award for abuse of discretion, our review is de novo here because Marowitz presents a question of law: whether

18

Dostie satisfied the statutory criteria for entitlement to attorney fees. (See *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 596–597.)

Dostie prevailed and was awarded damages on their Unruh Act, FEHA, and TPO causes of action. Both statutes and the ordinance contain attorney fee provisions. (Civ. Code, § 52, subd. (a) [liability for Unruh Act violation includes "any attorney's fees that may be determined by the court"]; Gov. Code, § 12989.2 ["[T]he court may, at its discretion, award the prevailing party, including the department, reasonable attorney's fees and costs"]; Oakland Mun. Code, § 8.22.670, subd. (D)(2) ["In any civil action brought pursuant to the TPO, the prevailing Tenant is entitled to recover the Tenant's reasonable attorney's fees"].) Dostie sought attorney fees pursuant to these statutory and legal provisions, *not* pursuant to any contract between the parties.

Marowitz cites *Flannery v. Prentice* (2001) 26 Cal.4th 572 for his position that the fee clause in the rental agreement "supercede[s]" any statutory or legal entitlement to attorney fees. *Flannery* offers no such support. In that case, a litigant was awarded certain statutory attorney fees and then filed an action against her former attorneys claiming she was entitled to that fee award. (*Id.* at p. 576.) The California Supreme Court concluded that, absent an enforceable agreement *regarding the disposition of such attorney fees*, those fees belonged to the attorneys. (*Id.* at p. 590.) Marowitz claims no such agreement here.

Nor are we persuaded by Marowitz's additional challenges to the attorney fee award. He contends that the statutory attorney fees are unconstitutional because they impair his rental agreement with Dostie. (U.S. Const., art. I, § 10.) But again, both parties conceded that the rental agreement was unenforceable and Dostie's causes of action were not based on

19

any such contract.  We also reject Marowitz's argument that Dostie should not have been awarded attorney fees because they obtained damages of less than $25,000 that could have been rendered in a limited civil case. (See Code Civ. Proc., § 1033, subd. (a).)  The argument makes no sense. Dostie obtained $60,000 in damages, $40,000 of which were for the Unruh Act, FEHA and TPO causes of action and $20,000 for the intentional torts.

In sum, we conclude that the trial court did not err in awarding attorney fees to Dostie.  Dostie's request that we award them attorney fees incurred in this appeal, as set forth in their respondent's brief and not by motion, is denied.  (See Rule 3.1702(c) [describing procedure to claim attorney fees on appeal].)

## DISPOSITION

The judgment and fee order are affirmed.  Dostie is entitled to recover their costs on appeal.  (Rule 8.278(a)(2).)

20

_____

STEWART, P.J.


We concur.


_____

RICHMAN, J.


_____

MILLER, J.


*Dostie v. Marowitz* (A168780, A169164)


21